# CHARLESTON.

## T. E. HARRIS *et al. v.* B. H. COLIVER

(No. 6026)

Submitted February 7, 1928.   Decided February 14, 1928.

1. JUSTICES OF THE PEACE—*On Appeal From Justice Court in Interpleader Suit to Determine Rights to Attached Property, Peremptory Instruction Held Erroneous Where Evidence Was Conflicting (Code, c. 50, § 151).*

   In an interpleader suit under Chapter 50, section 151, Code, the court on appeal should submit to the jury all the material

facts in issue supported by the evidence; and it is erroneous to give a peremptory instruction where the evidence is conflicting on a material issue. (p. 177.)

(Justices of the Peace, 35 C. J. § 572.)

2. ESTOPPEL—*One Inducing Another to Believe Fact on Which He Acts to His Prejudice is Estopped as Against Him to Deny Truth Thereof; Owner Permitting Another to Claim Ownership and Mortgage Property Without Asserting Truth is Estopped to Claim Superior Lien for Unpaid Purchase Price.*

Where a person by his conduct induces another to believe the existence of a particular fact, and the other acts thereon to his prejudice, the former is estopped, as against the latter, to deny that such fact in truth exists. (p. 179.)

(Estoppel, 21 C. J. § 2.)

3. SAME—*Estoppel to Deny Truth of Fact on Which Another Acts to His Prejudice is Available at Law.*

Such estoppel is, as a rule, as available in a court of law as in a court of equity. (p. 179.)

(Estoppel, 21 C. J. § 121.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mercer County.

Interpleader proceeding between T. E. Harris and others and B. H. Coliver to determine rights to attached property. Judgment for the latter, and the former bring error.

*Reversed and remanded.*

*James S. Kahle,* for plaintiffs in error.
*W. H. Malcolm,* for defendant in error.

WOODS, JUDGE:

This writ challenges the action of the circuit court of Mercer county in directing a verdict for defendant, and entering judgment thereon, in a certain interpleader proceeding instituted to determine title and right of possession to a 7-A Hoffman Pressing Machine by claimants under a deed of trust against a party invoking attachment to recover for payments due on the machine from the purchaser.

Prior to July 20, 1925, the defendant, Coliver, had operated a pressing shop in a portion of a building owned by Turner Dixie. On the date aforesaid Dixie, according to his testimony, was in the pressing shop together with Coliver and one Braxton. Dixie states that Braxton informed him that he had bought out Coliver. Braxton approached Dixie at the same meeting in regard to securing a loan to enable him to purchase an automobile for the business. On July 25th, Braxton arranged for borrowing $200.00 from Dixie to make the first payment on the proposed automobile. A deed of trust was drawn up transferring title to the pressing machine to one Harris, as trustee, to secure Dixie, which deed of trust was acknowledged on July 27th. A check for $200.00 was at the same time given by Dixie to a certain automobile sales agency to cover the first payment on the car. Coliver denies making the statement attributed to him by Dixie that Braxton had bought the shop. He states that the sale was not consummated until sometime early in August. He introduces a receipt dated August 5th for $50.00, and a second, dated August 10th, for $50.00, which completed, as he states, the first payment on the shop. On the latter date Coliver gave a bill of sale for the property to Braxton. The deed of trust to Harris, trustee, was recorded on August 15th. Braxton absconded and defaulted payment of the $200.00 within the sixty day period; Dixie had his trustee to advertise the pressing machine for sale. And on October 15th, Coliver swore out an attachment before a justice of the peace for $75.00, the amount then due on purchase price of the pressing outfit.

The mortgagee in the deed of trust, Dixie, intervened in such attachment suit, under section 151 of Chapter 50 of the Code, by petition stating that he had such interest in the property about to be sold as entitled him to have the same released from such levy and prevent the sale thereof thereunder, and praying that an issue be made upon said petition by the justice to try the claimants right or interest in the said property. Bond was given as provided by statute. Issue was joined on said petition, and a trial had on such issue before the justice. It was carried by appeal to the circuit court and submitted to the court and a jury. At the conclusion of the hearing,

the court directed a verdict for the defendant Coliver. Dixie comes here on a writ of error.

The errors relied on for reversal are: (1) Refusing to quash the attachment and to hold that the defendant had no lien claim by virtue of it; (2) refusing to direct a verdict for the plaintiff; (3) instructing the jury to find for the defendant and refusing to give instructions offered by the plaintiff; and (4) refusing to set aside the verdict.

The motion to quash the attachment was made in the circuit court before the case was submitted to the jury and was taken under advisement by the court, but the record discloses no formal ruling thereon. The rule is that an intervenor in an attachment proceedings must recover, if at all, on the strength of his own right. *Hoff* v. *Eddy,* 96 W. Va. 452. Under our decisions he is not entitled to have an adjudication as to the validity of the attachment until his right has been either admitted or established. *Yellow Pine Lumber Company* v. *Mays,* 81 W. Va. 46. The nature of the intervenor's claim was not as fully set out in his petition as is advisable, but was shown by documentary and oral evidence on the trial. Coliver failed to make any reservation of title of the property conveyed to Braxton as he might have done under sections 4, 5 and 6 of Chapter 99A, Code, to secure himself in the payment of the purchase money, so he must rely alone on his attachment. This was sued out by him in the light of the constructive notice of the existence of the mortgage, which the statute says that the recordation thereof shall be. It is settled law that a creditor under a deed of trust made by the defendant debtor may intervene. *Modern Show Case Co.* v. *Todd,* 103 W. Va. 490; *Rollins* v. *Hess,* 27 W. Va. 570; *Bamberger* v. *Halberg,* 78 Ky. 376; *Skinner* v. *Thompson,* 21 Mo. 15; *Huiser* v. *Beck,* 55 Mo. App. 668; *Miller* v. *Campbell,* 13 Okla. 75; *Potlach* v. *Runkel,* 16 Idaho 192; 18 Anno. Cas. 591; 23 L. R. A. (N. S.) 536. Let it be remembered that the attachment lien does not extend beyond the interest of the debtor in the property attached. It does not displace prior equities or rights, but is subject to all such equities or rights to which the property was liable at the time the attachment was levied thereon. The lien of a mortgage, where the statutory pro-

visions with respect to execution, delivery and recordation is complied with, is if first in time usually held to be first in right. Hence, the rule is evolved that a mortgaged chattel is not attachable in an action against a mortgagor. *Neill* v. *Produce Company,* 41 W. Va. 37. Therefore, the mortgagee here, intervening under this section (Code, Chapter 50, section 151), by proving the execution of a chattel mortgage on the attached property, valid on its face, recorded prior to the suing out of the attachment, and the right of the possession to said property by reason of the maturity of the debt secured by it, made out a *prima facie* case.

. But, the attaching creditor rejoins that the mortgagor, Braxton, was not the owner of the property on which the trust was given at the time of the execution of the trust deed. This raises a controversial question of fact. It is a maxim of the common law that a man cannot grant a thing which he has not—*nemo dat quot non habet.* To constitute a valid sale at law the vendor must have a present property, either actual or potential, in the thing sold. If Braxton was the owner of the Pressing Machine at the time of the execution of the deed of trust to secure the landlord Dixie, superior legal title in the intervenor would be clear. The defendant Coliver admits, however, that Braxton did acquire thereafter such property. Though the trust under such condition would be void at common law, it would give Dixie an equitable lien on the property. *Electric Company* v. *Furniture Company,* 70 W. Va. 166; *Horner-Gaylord* v. *Fawcett,* 50 W. Va. 487. The intervenor, however, having shown a deed of trust on the attached property, valid on its face, the burden of proving its invalidity rests on the attaching creditor. 11 C. J. 492. What is shown in the record on the question of ownership? There is a presumption that the mortgagor is the owner of the property. The mere giving of the mortgage is an assertion of ownership by the mortgagor. *Kelly* v. *Reid,* 57 Miss 89. The instrument in question here contained a covenant that the pressing machine belonged "solely to the grantor". Then, the mortgagee testified that Coliver (the attaching creditor) told him, prior to the time of his taking the deed of trust, that "I have sold out" to Braxton, and that on the day the trust was exe-

cuted said, "I have nothing more to do with the place."
True, Coliver denies having made these statements, but he
admitted on cross-examination that "Braxton paid the rental
from July 31". Aside from Coliver's denial he has only
a bill of sale, bearing date on August 10th, to support his con-
tention. This question of fact should have been submitted
to the jury. The instructions asked for by the plaintiff told
them, in effect, that if they believed from the evidence that
Coliver told Dixie, prior to the execution of the trust deed,
that he had sold the pressing machine to Braxton, and on the
faith of this statement of Coliver, Dixie advanced the money
to Braxton and took the deed of trust on such machine secur-
ing the payment thereof, that Coliver was estopped as to his
claim here to deny such ownership being in Braxton, and the
jury should find for the plaintiff. These instructions merely
gave expression to the law that if a person by his conduct
induces another to believe in the existence of a particular
fact, and the other acts thereon to his prejudice, the former
is estopped, as against the latter, to deny that such fact in
truth exists. 21 C. J. 1060. The ground on which this
estoppel rests is that the conduct constitutes an implied rep-
resentation of the truth of the fact in question. Bigelow, Es-
toppel (5th ed.) p. 570. This defense of equitable estoppel
is, as a rule, as available in courts of law as in courts of
equity. *Hoge* v. *Fidelity Loan & Trust Co.,* 103 Va. 1; *Dick-
enson* v. *Colgrove,* 100 U. S. 578; *Barnard* v. *Seminary,* 49
Mich. 444.

The court therefore, in the light of the authorities, erred in
refusing to give the instructions to the jury as asked for by
the plaintiff, and further erred in directing a verdict for the
defendant.

It is an outstanding fact that the intervenor here has a
right in the attached property which he may assert, if not
at law, surely in equity. Code, Chapter 50, section 169, pro-
vides that on appeals from a justice, the cause in the circuit
court shall be determined "without reference to the judgment
of the justice, on the principles of law and equity." Again,
it is provided that such court "shall make any order during
the progress of the cause, which the principles of law and

equity may require; and shall render judgment as the right shall appear.'' Section 173. While such provisions relate to appeals from a justice in general, section 153 gives an appeal in an interpleader suit in a justice court in like manner as from judgments. Whether under such provisions the application of such equitable right may be asserted here is a question which we moot but do not decide.

*Reversed and remanded.*