526 S.E.2d 34

**STATE of West Virginia ex rel. Darrell V. McGRAW, Jr., Attorney General, Plaintiff Below, Appellant,**

v.

**COMBS SERVICES; Combs Services, Inc.; Combs Funeral Services, Inc., d/b/a Greenlief–Combs Funeral Home; Steven W. Combs, Individually; and Steven W. Combs, Funeral Director, Defendants Below, Appellees,**

and

**Mountain Valley Bank, N.A., Intervenor Below, Appellee.**

No. 26196.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 6, 1999.

Decided Dec. 10, 1999.

Darrell V. McGraw, Jr., Attorney General, Jill L. Miles, Deputy Attorney General, Charleston, West Virginia, Attorneys for the Appellant.

Harry A. Smith, III, Jory & Smith, L.C., Elkins, West Virginia, Attorney for the Appellee, Mountain Valley Bank, N.A.

Roger Forman, Forman & Crane, Charleston, West Virginia, Deborah M. Zuckerman, AARP Foundation, Michael Schuster, AARP, Washington, District of Columbia, Attorneys for Amicus Curiae, American Association of Retired Persons.

Charles D. Dunbar, Jackson & Kelly, PLLC, Charleston, West Virginia, John J. Gill, Michael F. Crotty, L.H. Wilson, American Bankers Association, Washington, District of Columbia, Attorneys for Amicus Curiae, American Bankers Association.

Sandra M. Murphy, Julia A. Chincheck, Kenneth E. Webb, Jr., Bowles Rice McDavid Graff & Love, PLLC, Charleston, West Virginia, Attorneys for Amicus Curiae, West Virginia Bankers Association.

DAVIS, Justice:

The plaintiff below, and appellant herein, Darrell V. McGraw, Jr., Attorney General of West Virginia [hereinafter "Attorney General"], appeals the November 9, 1998, order of the Circuit Court of Tucker County. In that

order, the circuit court determined that the perfected security interests of the intervenor below and appellee herein, Mountain Valley Bank, N.A., were superior to the statutory liens which were claimed by the Attorney General and which arose pursuant to W. Va.Code § 47–14–11(d) (1995) (Repl.Vol.1999) as a result of the failure of the defendants below and appellees herein, Combs Services, *et al.*, to place in trust monies they had received from the sale of preneed funeral contracts. Additionally, the court ruled that the claims of two preneed funeral contract buyers, who purchased their contracts prior to the creation of the intervenor's perfected security interests, did not constitute statutory liens in accordance with the then-applicable prior version of the priority statute, W. Va.Code § 47–14–11(d) (1983) (Repl.Vol. 1992). Upon a review of the parties' arguments, the appellate record, and the pertinent authorities, we find that, as between the preneed funeral contract claims and the intervenor's secured claims at issue herein, the contract claims arising before the perfection of the intervenor's security interests should receive first priority; the intervenor's secured claims are entitled to second priority; and the contract claims arising after the intervenor perfected its security interests should be paid third. Therefore, we affirm as modified the ruling of the Tucker County Circuit Court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts of this case are largely undisputed by the parties. Beginning in June, 1983, Steven W. Combs and Greenlief–Combs Fu-

neral Home [hereinafter collectively referred to as "Combs," "the defendants," or "the Combs defendants"] sold preneed funeral contracts.[1] W. Va.Code § 47–14–1, *et seq.*, the Preneed Burial Contracts Act, regulates such contracts and charges the Consumer Protection Division of the West Virginia Attorney General's Office [hereinafter "the Division"] with the administration and enforcement of these provisions. Pursuant to W. Va.Code § 47–14–8(f) (1987) (Repl.Vol.1992) and W. Va.Code § 47–14–8(f) (1995) (Repl. Vol.1999), all sellers of preneed funeral contracts are required to record the contracts with the Division and to pay a recording fee therefor. In addition, W. Va.Code § 47–14–5(a)(3) (1987) (Repl.Vol.1992) and W. Va.Code § 47–14–5(a)(3) (1995) (Repl.Vol.1999) mandate sellers of preneed funeral contracts to deposit the sales proceeds in a separate trust account to ensure the continued availability of these funds for future burial expenses.

During a 1997 audit of Combs, the Division discovered that he had violated the terms of W. Va.Code § 47–14–8(f) by failing to record the contracts he had sold and by neglecting to pay the attendant recording fees. In January, 1998, the Division filed suit against Combs, in the Circuit Court of Tucker County, regarding these violations. This suit was settled, with Combs agreeing to record the unrecorded contracts and to tender the appropriate recording fees. Following this settlement, the Division learned that the Greenlief–Combs Funeral Home was no longer in business. The Division, recognizing that Combs had sold preneed funeral contracts to individuals who were still living, requested Combs to turn these files over to the Divi-

1. The term "preneed funeral contract" is defined as

> any contract, agreement, mutual understanding, series or combination of contracts, agreements and mutual understandings, including a contract that is financed by the purchase of an insurance policy or annuity, under which, for a specified consideration paid in advance of death in a lump sum or by installments, a person promises to furnish or make available or provide funeral services, funeral goods or burial goods for use at a time determinable by the death of the contract beneficiary who is either named or implied therein.

W. Va.Code § 47–14–2(12) (1995) (Repl.Vol. 1999). *Cf.* W. Va.Code § 47–14–2(12) (1987) (Repl.Vol.1992) ("'Preneed funeral contract' means any contract, agreement, mutual understanding, series or combination of contracts, agreements and mutual understandings, other than a contract of insurance, under which, for a specified consideration paid in advance of death in a lump sum or by installments, a person promises to furnish or make available or provide funeral services, funeral goods or burial goods for use at a time determinable by the death of the 'contract beneficiary' who is either named or implied.").

sion. Combs eventually surrendered the files of fourteen contract buyers.

An audit of these accounts revealed that, contrary to W. Va.Code § 47–14–5(a)(3), Combs had failed to deposit the sales proceeds for these contracts, approximately $52,518.66, into a separate trust account.[2] Therefore, the Division again filed suit, in Tucker County Circuit Court, against Combs seeking, *inter alia*, to preliminarily enjoin him from engaging in the trade of funeral director and requesting the court to issue a prejudgment attachment on all property and assets held by all of the Combs defendants. By order entered July 21, 1998, the Circuit Court of Tucker County granted a preliminary injunction to enjoin Combs from practicing his trade as a funeral director in this State and attached several pieces of the Combs defendants' property.[3] Thereafter, by order entered August 17, 1998, the circuit court entered default judgment against the Combs defendants and in favor of the Division upon the defendants' failure to answer the Division's complaint.

While the Division was seeking injunctive relief, the intervenor below and appellee herein, Mountain Valley Bank, N.A. [hereinafter "the Bank"], filed a motion to intervene in the proceedings, claiming to be an interested party because it holds two promissory notes secured by the previously-attached Combs defendants' property.[4] In the course of its intervention, the Bank asserted that its security interests in the attached property gave it a superior right over the claims of the contract buyers. By order entered November 9, 1998, the circuit court agreed with the Bank's assertion, ruling that "the Plaintiff's [the Division's] statutory lien under West Virginia Code [§] 47–14–11(d) does not have priority over the properly perfected security interests of the Intervenor [the Bank]."[5] The

---

2. The details of these preneed funeral contracts are as follows:

| Contract Buyer | Contract Date | Amount Paid by Buyer |
|---|---|---|
| Ashby, Jr., Frank for Ashby, Dora | August 19, 1997 | $ 1,200.00 |
| Bishop, Opal | August 26, 1997 | $ 1,596.00 |
| Carr, Doral for Carr, Pansy | January 12, 1998 | $13,100.00 |
| Carrico, Leota | December 10, 1998 | $ 1,000.00 |
| Ends, Doyle | August 5, 1997 | $ 4,195.00 |
| Everly, Sarah | 1990 | $ 3,400.00 |
| Harbert, Goldie | December 6, 1994 | $ 5,252.10 |
| Hebb, Charles | May 8, 1997 | $ 4,360.00 |
| Long, Nellie | March 5, 1997 | $ 4,885.40 |
| May, Helen for Kling, Asa | Date Not Available | $ 1,318.56 |
| Nestor, Muriel | January 8, 1997 | $ 2,500.00 |
| Nestor, Muriel for Nestor, Harold | January 8, 1997 | $ 2,500.00 |
| Neville, Faye | October 22, 1997 | $ 5,391.60 |
| West Virginia Department of Health and Human Resources for Regester, Sammie | March 26, 1998 | $ 1,820.00 |
| **Total contract funds missing** | | **$52,518.66** |

3. The attached property included several automobiles (a 1990 Cadillac Hearse, a 1991 Mercedes Benz, a 1968 Mercedes Benz, and a 1998 GMC Suburban); a house and property in Hambleton, Tucker County, West Virginia; funeral home supplies and inventory; miscellaneous personal property; the contents of a safe deposit box; a checking account; and Greenlief–Combs Funeral Home's accounts receivable.

4. The Bank is the payee and holder of two promissory notes executed by Combs Services, Inc., guaranteed by Steven W. Combs, and secured by the defendants' property. The first note, dated December 30, 1997, and renewing an earlier note dated September 6, 1996, is in the amount of $25,000.00; the financing statement perfecting the Bank's security interest granted therein was filed on September 9, 1996. The second note, dated September 6, 1996, is in the amount of $80,026.53; the financing statement for this note was filed on September 11, 1996.

5. The circuit court found the temporal relationship of the competing claims to the defendants' assets to be as follows:

1) That the claims of Sarah Everly and Goldie Harbert were created by the purchase of pre-need funeral contracts and were purchased prior to the effective date of the Amendment to West Virginia Code [§] 47–14–11(d) creating the statutory lien.

2) That the Intervenor [the Bank] properly perfected its security interest in loans to the Defendant[s] of $80,026.53 and $25,000.00 in September of 1996.

3) That the purchases of pre-need funeral contracts by Muriel and Harold Nestor, Nellie Long, Charles Hebb, Doyle Ends, Doral Ashby,

court also concluded that "[t]he Sarah Everly and Goldie Harbert pre-need funeral contracts are not statutory liens." From this order of the circuit court, the Division appeals to this Court.

## II.

### STANDARD OF REVIEW

■ Prior to reaching the merits of the Division's assignments of error, we must consider the standard governing our review of the circuit court's rulings. Generally,

[i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997). With specific regard to the legal issues presented for our determination, " '[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syllabus point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995)." Syl. pt. 2, *Webster County Comm'n v. Clayton*, 206 W.Va. 107, 522 S.E.2d 201 (1999). *See also* Syl. pt. 1, in part, *West Virginia Human Rights Comm'n v. Garretson*, 196 W.Va. 118, 468 S.E.2d 733 (1996) ("Interpreting a statute presents a purely legal question subject to our *de novo* review ...."). Having enunciated these standards, we now turn to the parties' contentions.

## III.

### DISCUSSION

On appeal to this Court, the Division challenges the circuit court's interpretation of the priority language contained in W. Va.Code § 47–14–11(d). Specifically, the Division contends that the circuit court erroneously determined that the Bank's properly perfected security interests in the defendants' property were superior to the priority afforded to the statutory liens of those individuals who had purchased preneed funeral contracts from the Combs defendants. The Bank rejects the Division's arguments and urges this Court to uphold the lower court's ruling.[6]

A review of the facts underlying this appeal suggests that there are three groups of claims competing for participation in the distribution of the defendants' attached assets: claims of contract buyers that arose before the Bank acquired its security interests [hereinafter "pre-Bank claims"]; the Bank's security interests [hereinafter "Bank claims"]; and claims of contract buyers that arose after the Bank acquired its security interests [hereinafter "post-Bank claims"]. Given the chronology of these claims, it appears that the statutory language governing this controversy is two-fold. The pre-Bank claims are the product of preneed funeral contracts entered into in 1990, by Everly, and on December 6, 1994, by Harbert. As these events occurred prior to the currently-applicable amendments to W. Va.Code § 47–14–11(d), *see* W. Va.Code § 47–14–11(d) (1995) (Repl.Vol.1999), they are governed by the statute then in effect, W. Va.Code § 47–14–11(d) (1983) (Repl.Vol.1992). This language provides that "[a]ll preneed funeral contract buyers have a priority in claims

---

Opal Bishop, Faye Neville, and Leota Carrico took place after the perfection of the Intervenor's [the Bank's] security interest.

4) The Intervenor [the Bank] renewed the note of $25,000.00 on December 30, 1997 which note had previously been perfected as a secured lien by the Intervenor [the Bank].

5) The purchase of the pre-need funeral contract by Doral Carr occurred on January 12, 1998.

6) The Intervenor [the Bank] replaced the collateral attached to the $25,000.00 note with a 1998 GMC Suburban on February 24, 1998.

7) The purchase of the pre-need funeral contract by the West Virginia Department of Health and Human Resources on behalf of Sammie Register [sic] occurred on March 26, 1998.

6. At this juncture, we wish to acknowledge the appearance of the various Amici Curiae herein, namely the American Association of Retired Persons, the American Bankers Association, and the West Virginia Bankers Association. We will consider their assertions with respect to the parties with whom they are aligned.

against the provider, to the extent that their interest is set forth in this article." W. Va.Code § 47–14–11(d) (1983).

Subsequent to the execution of the contracts culminating in the pre-Bank claims, the Legislature amended W. Va.Code § 47–14–11(d) to incorporate additional language explaining the priority afforded to purchasers of preneed funeral contracts. W. Va. Code § 47–14–11(d) (1995) (Repl.Vol.1999), which applies to the post-Bank claims, directs:

> All preneed funeral contract buyers have a priority in claims against the provider, to the extent that their interest is set forth in this article. Such priority constitutes a statutory lien at the time the contract was executed to the extent payments on the contract were made and interest has accrued.

W. Va.Code § 47–14–11(d) (1995).

When interpreting statutes promulgated by the Legislature, we first discern the objective of the enactment. " 'The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.' Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. pt. 6, *State ex rel. ACF Indus., Inc. v. Vieweg*, 204 W.Va. 525, 514 S.E.2d 176 (1999). In gleaning legislative intent, we endeavor to construe the scrutinized provision consistently with the purpose of the general body of law of which it forms a part.

> " 'Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments.' Syllabus Point 3, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syllabus point 3, *Boley v. Miller*, 187 W.Va. 242, 418 S.E.2d 352 (1992).

Syl. pt. 3, *Rollyson v. Jordan*, 205 W.Va. 368, 518 S.E.2d 372 (1999). *See also* Syl. pt. 4, in part, *State ex rel. Hechler v. Christian Action Network*, 201 W.Va. 71, 491 S.E.2d 618 (1997) ("In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation."

(internal quotations and citations omitted)); Syl. pt. 2, in part, *Mills v. Van Kirk*, 192 W.Va. 695, 453 S.E.2d 678 (1994) ("To determine the true intent of the legislature, courts are to examine the statute in its entirety and not select 'any single part, provision, section, sentence, phrase or word.' Syllabus Point 3, in part, *Pristavec v. Westfield Ins. Co.*, 184 W.Va. 331, 400 S.E.2d 575 (1990).").

This effort to maintain consistency among related statutes is particularly important as legislators normally are charged with knowledge of the law in effect at the time of a statute's enactment or amendment. In this regard, "[w]e may 'assume that our elected representatives ... know the law.' " *State ex rel. Smith v. Maynard*, 193 W.Va. 1, 8–9, 454 S.E.2d 46, 53–54 (1994) (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1958, 60 L.Ed.2d 560, 576 (1979)), *overruling on other grounds recognized by State ex rel. Mitchem v. Kirkpatrick*, 199 W.Va. 501, 485 S.E.2d 445 (1997) (per curiam). *See also State v. Hosea*, 199 W.Va. 62, 68 n. 15, 483 S.E.2d 62, 68 n. 15 (1996) ("[W]e assume that elected representatives know the law at the time of any amendment to a statute ....").

Furthermore, it is customary to treat a statutory amendment as if the amendatory language had been incorporated in the original enactment. "Ordinarily where an amendment has been adopted to a comprehensive legislative act covering a particular subject, in construing the act thereafter it will be read as if the amendment had been in it from the beginning." Syl. pt. 1, *State v. Sine*, 91 W.Va. 608, 114 S.E. 150 (1922). *Accord* Syl. pt. 5, *State v. Vendetta*, 86 W.Va. 186, 103 S.E. 53 (1920) ("An amendment to a statute should generally be construed as if it had been included in the original act.").

Once the legislative intent underlying a particular statute has been ascertained, we proceed to consider the precise language thereof. " 'A statute that is ambiguous must be construed before it can be applied.' Syllabus point 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992)." Syl. pt. 7, *State ex rel. ACF Indus., Inc. v. Vieweg*, 204 W.Va. 525, 514 S.E.2d 176. *See also* Syl. pt. 1, in

part, *Ohio County Comm'n v. Manchin,* 171 W.Va. 552, 301 S.E.2d 183 (1983) ("Judicial interpretation of a statute is warranted only if the statute is ambiguous . . . ."). However, "[w]here the language of a statutory provision is plain, its terms should be applied as written and not construed." *DeVane v. Kennedy,* 205 W.Va. 519, 529, 519 S.E.2d 622, 632 (1999) (citations omitted). *See also* Syl. pt. 4, in part, *Daily Gazette Co., Inc. v. West Virginia Dev. Office,* 206 W.Va. 51, 521 S.E.2d 543 (1999) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." (internal quotations and citations omitted)); Syl. pt. 5, in part, *Walker v. West Virginia Ethics Comm'n,* 201 W.Va. 108, 492 S.E.2d 167 ("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." (internal quotations and citations omitted)).

■ Applying these rules of statutory construction to the statute at issue herein, W. Va.Code § 47–14–11(d), we observe that the express purpose of the Preneed Burial Contracts Act is to ensure that

> members of the public may have an opportunity to arrange and pay for funerals for themselves and their families in advance of need while at the same time providing all possible safeguards whereunder such prepaid funds cannot be dissipated, whether intentionally or not, in order that such funds are available for the payment of funeral services so arranged . . . .

W. Va.Code § 47–14–1 (1995) (Repl.Vol. 1999). *See also* W. Va.Code § 47–14–1 (1983) (Repl.Vol.1992) (same). The Legislature's desire to protect purchasers of preneed funeral contracts from unscrupulous purveyors thereof is further evidenced by its establishment of the Preneed Guarantee Fund, which ensures that consumers receive the benefit of their contracted-for bargain. *See* W. Va.Code § 47–14–8(f) (1995) (Repl. Vol.1999). *See also* W. Va.Code § 47–14–8(f) (1987) (Repl.Vol.1992) (same). Thus, by incorporating the controverted priority language in W. Va.Code § 47–14–11(d), it is apparent that the Legislature intended to further protect the rights of individuals who have entered into preneed funeral contracts.

■ Closer inspection of the relevant law, however, indicates that such priority rights are not absolute. Both the prior and current versions of W. Va.Code § 47–14–11(d) incorporate language limiting the priority rights of contract buyers "to the extent that their interest is set forth in this article." *See* W. Va.Code § 47–14–11(d) (1995); W. Va.Code § 47–14–11(d) (1983). At first blush, it would appear that this limitation of priority rights is commensurate with the recording requirement set forth in W. Va.Code § 47–14–8(f), wherein sellers of preneed funeral contracts are mandated to record such agreements with the Division. *See* W. Va.Code § 47–14–8(f) (1995); W. Va.Code § 47–14–8(f) (1987). Under circumstances such as those presented by the instant appeal, however, such a limitation cannot be countenanced because one of the misdeeds of which the defendants have been accused is their failure to record these contracts. As such, it would be unjust to penalize the innocent purchasers by construing § 47–14–11(d) as limiting their rights to be coextensive with their recorded interests. *See* Syl. pt. 3, *State v. Kerns,* 183 W.Va. 130, 394 S.E.2d 532 (1990) (" 'Where a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made.' Syl. pt. 2, *Newhart v. Pennybacker,* 120 W.Va. 774, 200 S.E. 350 (1938)."); *State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 320, 305 S.E.2d 268, 277 (1983) (recognizing "the duty of this Court to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust, or unreasonable results" (citations omitted)), *superseded by statute on other grounds as stated in State ex rel. Hagg v. Spillers,* 181 W.Va. 387, 382 S.E.2d 581 (1989), *superseded by statute on other grounds as stated in State v. Yoak,* 202 W.Va. 331, 504 S.E.2d 158 (1998). Herein lies the ambiguity of this statute.

■ Given the incongruous result when W. Va.Code § 47–14–11(d) is applied literally to facts such as those presented by the case *sub judice,* then, we must look to the common law for guidance in interpreting the

scope of priority afforded to purchasers of preneed funeral contracts. "In determining the meaning of a statute, it will be presumed, in the absence of words therein, specifically indicating the contrary, that the legislature did not intend to innovate upon, unsettle, disregard, alter or violate ... the common law ...." Syl. pt. 27, in part, *Coal & Coke Ry. Co. v. Conley,* 67 W.Va. 129, 67 S.E. 613 (1910). The common law rule of priorities is generally one of "first in time[,] ... first in right." *Harris v. Coliver,* 105 W.Va. 174, 178, 141 S.E. 791, 792 (1928). *Accord City of Parkersburg v. Carpenter,* 203 W.Va. 242, 507 S.E.2d 120 (1998) (per curiam); *Blumberg Bros. Co. v. King,* 98 W.Va. 275, 127 S.E. 47 (1925), *superseded by statute on other grounds as stated in Kinkead v. Securo,* 112 W.Va. 671, 166 S.E. 382 (1932); *Scott v. Mercer Garage & Auto Sales Co.,* 88 W.Va. 92, 106 S.E. 425 (1921). In other words, "liens take precedence in the order of their dates.... [T]he principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds." *Heller & Co. v. Duncan,* 110 W.Va. 628, 630, 159 S.E. 52, 53 (1931) (citing *Rankin & Schatzell v. Scott,* 12 Wheat. 177, 25 U.S. 177, 6 L.Ed. 592 (1827)).

Based upon this common law foundation, it appears that the priority rights established by W. Va.Code § 47–14–11(d) arise upon the execution of the preneed funeral contract to which such priority rights are linked. This interpretation is fortified by the Legislature's subsequent amendment of § 47–14–11(d) which affirmatively links a purchaser's priority rights to the operative date of his or her preneed funeral contract: "Such priority constitutes a statutory lien *at the time the contract was executed* to the extent payments on the contract were made and interest has accrued." W. Va.Code § 47–14–11(d) (1995) (emphasis added). Having ascertained the

meaning of this statutory provision, we therefore hold that W. Va.Code § 47–14–11(d) (1983) (Repl.Vol.1992) and W. Va.Code § 47–14–11(d) (1995) (Repl.Vol.1999) establish in purchasers of preneed funeral contracts a statutory lien "at the time the contract [i]s executed to the extent payments on the contract [have been] made and interest has accrued" thereon. Priority is afforded to a § 47–14–11(d) lien with respect to all claims or liens of other creditors which arise after the execution of such preneed funeral contract.

■ Applying this holding to the present controversy, we note, with approval, the circuit court's analogous construction of W. Va. Code § 47–14–11(d). Although the preneed funeral contracts entered into by Everly and Harbert were governed by the prior version of this law, because they were entered into in 1990 and 1994, respectively, we nevertheless find that the statutory language then in effect establishes in these purchasers a priority interest in the assets of the defendants commensurate with the operative date of their contracts and their contractual payments and accrued interest. As both of these individuals executed their preneed contracts prior to the Bank's acquisition and perfection of its security interests, we conclude that Everly and Harbert have first priority when the defendants' assets are finally distributed.

■ With respect to the remaining claims presented for our consideration, we find that the Bank is entitled to the next level of priority. As between the Bank and the remaining consumers' claims, the Bank filed its security interests in the defendants' property in September, 1996, whereas these purchasers' preneed contracts were not executed until January, 1997, or thereafter. Finally, the third tier of priority[7] is afforded to the remaining contract purchasers,[8] whose claims

---

7. We wish to emphasize, however, that our determination of priorities in this case is limited to a consideration of only those claims presented for our review in the instant controversy, *i.e.,* the claims asserted by the Bank and by the Division on behalf of various purchasers of preneed funeral contracts. Thus, this decision should not be construed as governing the claims of additional creditors which claims have not been asserted in the present case.

8. After a thorough review of the appellate record, we have been unable to locate a specific contract date for the preneed funeral contract purchased by Helen May for Asa Kling, and for which $1,318.56 has been remitted. The priority afforded to this claim would be consistent with the priority afforded to the other claims at issue herein and would be determined by the date of the contract's execution.

were asserted by the Division herein and who entered their contracts between January 8, 1997, and December 10, 1998.[9]

■ As a final note, we wish to add that while certain contract purchasers may have claims that are inferior to the Bank's perfected security interests, they are not completely devoid of a remedy. In establishing the Preneed Burial Contracts Act, the Legislature specifically sought to protect consumers who prepay for funeral expenses and to safeguard the monies they contribute to such contracts. To implement this laudable goal, the Legislature has created the Preneed Guarantee Fund to ensure that funds paid toward preneed funeral contracts would, in fact, be available to the individuals who contributed the same.

In the event any contract buyer of any preneed funeral contract is unable to receive the benefits of the contract, or to receive the funds due by reason of his cancellation thereof, such buyer may apply therefor to the division on a form supplied by the division. Upon the finding of the division that said benefits or return of payment is not available to the buyer, the division will cause to be paid to the said buyer from the "Preneed Guarantee Fund" the amount actually paid by the buyer under the contract to the extent funds are available in the "Preneed Guarantee Fund". In the event multiple claims are made and there are insufficient funds in the "Preneed Guarantee Fund" to satisfy all claims in full, payments from the "Preneed Guarantee Fund" shall be made on a pro rata basis. . . .

W. Va.Code § 47–14–8(f) (1995). *See also* W. Va.Code § 47–14–8(f) (1987) (same).

## IV.

### CONCLUSION

For the foregoing reasons, we find that W. Va.Code § 47–14–11(d) extends a priority to purchasers of preneed funeral contracts commensurate with the date upon which they entered their contracts, their payments

thereon, and the interest such accounts have accrued. Thus, when the defendants' assets are distributed, the claims of Everly and Harbert are entitled to first priority, the Bank's perfected security interests should receive second priority, and the remaining purchasers' claims are to be afforded third priority. Accordingly, we affirm as modified the November 9, 1998, order of the Circuit Court of Tucker County.

Affirmed as Modified.

Judge ROBERT B. STONE, sitting by temporary assignment.

Justice SCOTT did not participate.

---

9. Having decided the issues presented for appellate consideration based upon the express statutory language contained in W. Va.Code § 47–14– 11(d), we need not consider the other arguments advanced by the Division.