No. 17-0643 – *Barber v. Camden Clark Memorial Hospital*

WORKMAN, C. J., dissenting:

**FILED**

**May 31, 2018**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

With blinders squarely in place, the majority has misinterpreted a statute aimed at mental health providers and facilities and thereby rendered a hospital's fully statutorily-compliant acts actionable. Respondent Camden Clark Memorial Hospital ("Camden Clark") responded to a properly-issued subpoena in strict compliance with its statutorily-mandated obligations, yet the majority has *post-hoc* burdened it with the impossible task of likewise complying with an incongruous and inapplicable statutory provision regarding mental health records. Because the majority's opinion purports to create liability for unsuspecting hospitals and/or health care providers which appropriately and meaningfully complied with medical records subpoenas, I respectfully dissent.

A party in unrelated litigation subpoenaed petitioner's medical records from Camden Clark, with full notice to petitioner, who was represented by counsel. Petitioner lodged no objection to the subpoena which was issued and handled it in strict compliance with the notice and reasonable wait period required by this Court in *Keplinger v. Virginia Elec. & Power Co.*, 208 W. Va. 11, 12, 537 S.E.2d 632, 633 (2000).[1] After being advised

---

[1] Syllabus Point 5 provides

[w]hen a party to a civil action seeks to utilize W. Va. R. Civ. P. 45 to subpoena an opposing party's medical records from a nonparty (as opposed to obtaining them by virtue of a release tendered by the party/patient), notice to the party/patient must

1

that petitioner had made no objection, Camden Clark scrupulously complied with the extraordinarily detailed procedure for production of hospital records under subpoena as set forth in West Virginia Code §§ 57-5-4a through 4j (Repl. Vol. 2012). However, contained somewhere within these records was a mental health admission which occurred at a predecessor hospital which petitioner failed to disclose to her counsel. As part of the production of her requested complete medical record and having been advised of no objection to their production, these records were produced as required by West Virginia Code § 57-5-4a *et seq*. Petitioner's counsel admitted that he did not review the records upon production. There is no dispute about these facts.

In spite of this not only lawful, but *statutorily required* act, the majority has seen fit to find that this action was violative of West Virginia Code § 27-3-1 (Repl. Vol. 2013). Without so much as examining the context of West Virginia Code § 27-3-1, nor attempting to square a hospital's seemingly competing obligation in responding to a subpoena contained in West Virginia Code § 57-5-4a *et seq*., the majority concludes that the disclosure ran afoul of a statutory provision generally deeming mental health records confidential. The majority addresses the ostensibly conflicting provisions of the hospital record disclosure statutes by simply declaring the mental health confidentiality statute "more specific" and therefore predominant over the "more general" hospital record

occur sufficiently in advance of service of the subpoena to provide a reasonable opportunity for the patient/party to object to the request.

disclosure statute. An examination of both demonstrates that this canon of statutory construction—"specific over general"—is not only inapplicable but its misapplication creates a wholly untenable scenario as pertains to the ability to subpoena hospital or other medical records.

West Virginia Code § 57-5-4a through 4j was enacted in 1981 and outlines the procedure to be followed by hospitals and litigants with regard to subpoenas *specifically* for "[h]ospital records." It provides that, for its purposes, hospital "records"

> *includes without restriction*, those medical histories, records, reports, summaries, diagnoses, and prognoses, records of treatment and medication ordered and given, notes, entries, X-ray, and other written or graphic data prepared, kept, made or maintained in hospitals that pertain to hospital confinements or hospital services rendered or patients admitted to hospitals or receiving emergency room or outpatient care.

W. Va. Code § 57-5-4a(a) (emphasis added). Nowhere does it exempt records which fall within its *unrestricted* definition which involve, more specifically, mental health treatment. The statutory scheme provides that to comply with a subpoena for such records, a hospital must produce "a true and correct copy . . . of *all* records described in such subpoena." W. Va. Code § 57-5-4b (emphasis added). It then describes a detailed methodology of sealing, identifying, and opening such records and duties pertaining specifically to the hospital's records custodian. This self-contained statutory scheme is contained in the Code chapter pertaining to "Evidence and Witnesses" and makes no exceptions, caveats, or deferments to other statutory provisions whatsoever.

3

West Virginia Code § 27-3-1, on the other hand, is part of Chapter 27 entitled "Mentally Ill Persons." Article 1A outlines the appointment of a Commissioner of the Department of Mental Health and expressly provides that its purpose is "to improve the administration of the state hospitals, raise the standards of treatment of the mentally ill and intellectually disabled in the state hospitals, encourage the further development of outpatient and diagnostic clinics, establish better research and training programs, and promote the development of mental health." W. Va. Code § 27-1A-1. "State hospital[s]" are defined therein as any hospital, center or institution "established, maintained and operated . . . to provide inpatient or outpatient care and treatment for the mentally ill, intellectually disabled or addicted." W. Va. Code § 27-1-6. The remainder of the chapter deals with voluntary and involuntary commitments, commitments of criminal defendants, and offenses related to mentally ill persons.

West Virginia Code § 27-3-1(a), as part of this statutory scheme regarding mental health facilities, provides generally that "[c]ommunications and information obtained in the course of treatment or evaluation of any client or patient are confidential information." It then provides that this confidentiality extends to

> the fact that a person is or has been a client or patient, information transmitted by a patient or client or family thereof for purposes relating to diagnosis or treatment, information transmitted by persons participating in the accomplishment of the objectives of diagnosis or treatment, all diagnoses or opinions formed regarding a client's or patient's physical, mental or emotional condition, any advice, instructions or prescriptions issued in the course of diagnosis or treatment, and

4

> any record or characterization of the matters hereinbefore described.

*Id*. It is clear given the tenor and language of this statute that it is intended to advise mental health facilities and providers that their records—in fact, the mere existence of them—are confidential. It places no undue burden on these facilities or providers to constrain their ability to disclose the very fact of or the details regarding their treatment of their entire patient or clientele base. The conditions under which these facilities may make disclosures regarding their treatment make it quite obvious that the statute is intended to provide guidance to such specialized facilities in producing records insofar as is necessary for purposes such as voluntary and involuntary commitment proceedings, commitment of criminal defendants, and National Instant Criminal Background Check System reporting. The entire purpose, therefore, of the statute is to provide limitations on and guidance to *mental health facilities* as to how and under what circumstances their very specialized records may be utilized in the course of rendering and reporting on mental health treatment or coordinating with other mental health entities or procedures. This Court has previously acknowledged as much:

> This section's location in Chapter 27 relating to mentally ill persons and the confidential information exceptions contained in W. Va. Code, 27-3-1(b), which involve mental health proceedings, would suggest that the legislature intended this confidentiality with regard to communication and information to be maintained between *mental health professionals and their clients.*

5

*State v. Simmons*, 172 W. Va. 590, 597, 309 S.E.2d 89, 96 (1983) (footnote omitted) (emphasis added).

Nevertheless, so myopically focused on a superficial reading of the statute, the majority overextends the statute's reach to place an onerous burden on an unsuspecting hospital which may happen to have records of or merely some reference to prior mental health treatment contained within the volumes upon volumes of records which it maintains. To reach this result, the majority misapprehends the very statutory construction principles upon which it relies. First and foremost, "'it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws, and to adopt that construction of a statutory provision which harmonizes and reconciles it with other statutory provisions . . . .'" *State v. Williams*, 196 W.Va. 639, 641, 474 S.E.2d 569, 571 (1996) (quoting *State ex rel. Pinson v. Varney*, 142 W.Va. 105, 109-10, 96 S.E.2d 72, 75 (1956)) (additional internal quotations and citations omitted). The majority opinion does just the opposite: it saddles Camden Clark with liability for merely adhering to a long-standing statutory procedure *expressly directed at the conduct of its business specifically* on the basis of a statute that applies to the obligations of very specific entities as part of an independent statutory scheme.

More importantly, however, the specific canon of statutory construction the majority singularly utilizes to reach its result simply has no application. The canon of statutory construction requiring a specific statute to be "given precedence" over a general statutory provision applies only to "inconsistent statutes which, *together, form a part of a*

6

*comprehensive body of law . . .*" *Carvey v. W. Virginia State Bd. of Educ.*, 206 W. Va. 720, 731, 527 S.E.2d 831, 842 (1999). The reason for this is obvious: in creating a comprehensive body of law, lawmakers are presumed to do so holistically, such that their contents should be read in harmony. There is no question that although these two statutes both address *generally* the concept of medical records, they are by no means part of a comprehensive body of law. Rather, the mental health record statute is specifically part of a body of law *exclusively* addressing "mentally ill persons," and governing mental health facilities and providers. The hospital subpoena statute pertains *specifically* to a hospital's production of records in response to a subpoena, as part of our general laws regarding evidence and witnesses. Accordingly, the mental health confidentiality statute is not a "more specific" iteration of medical record production rules. Rather, as pertains to a hospital producing medical records in response to a subpoena, the statutory scheme governing precisely that activity by that entity could not possibly be more specific to that activity or entity and plainly purports to preempt and govern that process exclusively.

It goes without saying that a hospital is not a mental health facility. That is not to say that such services may not be rendered in a hospital—obviously they can be. However, it is clear that a hospital is a medical facility of such breadth of service and operation that attempting to burden it—as an entity simply responding to a properly-issued subpoena—with statutory requirements that clearly pertain to the facilities and providers which exclusively deal with such matters is inequitable and not what the Legislature intended by enacting West Virginia Code § 27-3-1. The best evidence perhaps of the

7

Legislature's intended reach of the statute—even specifically as to mental health facilities or providers—is its most recent amendment, which permits the disclosure of such records pursuant to a subpoena insofar as the production is HIPAA-compliant, just as the records production at issue was. *See* Senate Bill 543, effective June 5, 2018.[2]

This Court has made clear that "[i]n gleaning legislative intent, we endeavor to construe the scrutinized provision consistently with the purpose of the *general body of*

---

[2] In light of this amendment, the majority's opinion is self-limiting, applying only to those subpoena disclosures which have already occurred or will occur until the effective date of the amendment. The amendment notwithstanding, the practical ramifications of the majority's opinion are wholly unsettling and demonstrate how badly its analysis has missed the mark.

It begs the question what expectations the majority had, if any, as to how a hospital should have handled subpoenas issued prior to its opinion. Was a hospital in receipt of a subpoena required to scour the hundreds or thousands of pages of medical records on a patient for any mere reference, "record or characterization" of any semblance of a "mental health" matter? *See* W. Va. Code § 27-3-1(a). Mental health information per the language of the statute includes not only an obvious mental health hospital admission, but any "record or characterization" of mental health treatment. This would presumably include any reference thereto in a past medical history or list of medications (items which are included repeatedly in nearly every hospital document created during an admission). And what was the hospital to do upon discovering such references? The statute forbids disclosing that any such information even exists; therefore, potential options such as redaction, notifying the litigants or the court officer subpoenaing the information would not appear to have been viable options. Was the hospital simply to "hide" such information and pretend it never existed for fear of violating the statute? Was the hospital to risk non-compliance with the subpoena at the risk of being sued for even alerting the parties that certain information, though properly requested, will not be provided if it even exists? These are quagmires peculiar to hospital records because of their overwhelming breadth of content and volume that simply do not exist if a subpoena is being issued directly to a mental health facility or provider: obviously the entirety of that record is, *presumptively*, a matter which is subject to the statute, a fact well-known to and able to be addressed head-on by the litigants.

*law of which it forms a part*." *State ex rel. McGraw v. Combs Servs*., 206 W. Va. 512, 518, 526 S.E.2d 34, 40 (1999) (emphasis added). Accordingly, "[s]tatutes which relate to the *same subject matter* should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. Pt. 3, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975) (emphasis added). These are not just empty *ad hoc* edicts to be doled out as window dressing for a particular resolution. These canons of statutory construction exist to ensure that this Court does not take an isolated statutory enactment and, despite all reason, practicality, and logic, apply it to situations to which it was never meant to apply. Rather than adhering to these precepts, the majority commingles statutes of differing specific subject matters and wholly different purposes, enacted separately as parts of entirely different statutory schemes. The result is much as one would expect: an entity which complied fully with those statutes specifically appertaining to it and its specific activity is now unwittingly subjected to liability for doing so.[3] Accordingly, I dissent.

---

[3] That is not to say, obviously, that no cause of action lies for violation of West Virginia Code § 27-3-1. This Court has previously held that "[t]here is a private tort cause of action for a violation of W. Va. Code, 27-3-1 [1977]." However, such a cause of action under the statute lies only against those who are subject to the statute—mental health providers and facilities. Moreover, my position on the inapplicability of the statute to Camden Clark's production of medical records pursuant to a subpoena is in no way affected by Syllabus Point 3 of *R. K. v. St. Mary's Med. Ctr., Inc*., 229 W. Va. 712, 735 S.E.2d 715 (2012), which holds simply that a "*common-law* tort claim[] based upon the wrongful disclosure of medical or personal health information [is] not preempted by [HIPAA]." (emphasis added). First, as is obvious, the majority opinion does not address the viability of a common law tort claim. *R. K*. did not reference in any fashion the statute at issue. More importantly, however, the absence of liability in this instance is not premised on

HIPAA preemption. Rather, it is based upon the wholesale inapplicability of the statute at issue, as explained herein.