HOPE BRICK WORKS *v.* CALL, COMMISSIONER OF LABOR.

5-43                                          256 S. W. 2d 729

Opinion delivered April 13, 1953.

*Weisenberger & Wilson,* for appellant.

*Luke Arnett,* for appellee.

*Reid & Roy, Amici Curiae.*

WARD, Justice. This appeal calls for an interpretation of the words "last employment" as used in the Em-

ployment Security Act as found in *Ark. Stats. (Supp.)*, § 81-1106 (a), which is set out as follows:

"81-1106. *Disqualification for benefits.*—If so found by the Commissioner, an individual shall be disqualified for benefits:

"(a) *Voluntarily leaving work.* If he voluntarily and without good cause left his *last employment.* Such disqualification shall be for ten [10] weeks of unemployment as defined in Subsection (i) of this Section." [emphasis supplied.]

Subsection (i) mentioned above reads:

"(i) *Week of unemployment defined.* A week of unemployment as used in this Section shall mean a week during which such individual would be otherwise eligible for benefits."

*Facts.* One Mark Phillips, a negro, who had been employed by appellant, Hope Brick Works, for about 20 years, voluntarily quit work in the early part of October, 1951. Soon thereafter he secured employment with the Clary Multiplier Corporation at Los Angeles and worked from October 14, 1951, to December 28, 1951, when he again quit voluntarily. In a short time he returned to his home at Hope and applied for work with appellant, his former employer, but he was not re-employed. Then, in the latter part of January, 1952, he obtained employment with the Union Compress & Warehouse Company at Hope.

Claimant says that when he accepted the last-mentioned employment he knew the job would only be for a week or so, and it is admitted that he did work only one week, or until January 29, 1952. It is also admitted that he worked with the Compress as long as work was available.

Phillips filed his initial claim for benefits on January 30, 1952, which was the day following the last day of his employment with the Compress.

*The Question.* The practical question presented is: Was Phillips entitled to draw benefits immediately, *i.e.,*

at the end of his normal waiting period, or was he still under the disqualification [10 weeks of unemployment] imposed under Subsection (a) because he had voluntarily left his employment with appellant and the Multiplier Company in California? The technical or legal question is: Under Subsection (a) was Phillips' "last employment" with the Compress Company or was it with appellant [or the California company]?

*Trial Court's Decision.* The trial court held that Phillips was entitled to draw compensation at once and was, therefore, under no disqualification as a result of his having previously voluntarily quit his employment. The trial court based its decision on the following determinations: (a) Phillips' employment at the Compress was *bona fide;* (b) therefore, that was his "last employment" within the meaning of the law [Subsection (a)]; and (c) under § 81-1106, cited above, the Commissioner could exercise his discretion in applying the disqualification of ten weeks' unemployment.

The result reached by the trial court was the same as reached by the Board of Review and other departmental agencies.

*Our Conclusions.* We are unable to agree with the trial court. We think it is clear that the statute [§ 81-1106], quoted above, leaves nothing to the discretion of the Commissioner in the matter of imposing or not imposing the disqualification once he has determined that claimant voluntarily left his employment. Under an earlier statute [now repealed] which fixed the disqualification period from one week to five weeks, the Commissioner was, of course, charged with a discretion in fixing the period of time, but such is not the case under the present statute.

The questions raised by "last employment" and *"bona fide* employment" are more difficult. They are necessarily related and we shall discuss them together.

We think the key to the issue is to be found in Subsection (g) of said § 81-1106, which reads:

" (g) *Disqualification satisfied by employment.* Any week of disqualification under the provisions of Subsections (a), (b) and (c) of this section shall be satisfied by a week of employment which occurs subsequent to the week in which the disqualifying act occurred and in which he has earnings in an amount equal to his weekly benefit amount."

It is difficult for us to give meaning and effect to the above-quoted subsection and at the same time harmonize it with the conclusion reached by the trial court. We recognize that in a literal sense Phillips' last employment was with the Compress, but we do not think such a literal interpretation is compatible with the spirit and purpose of the quoted sections or of the entire Act.

Earlier, we left undecided whether the ten weeks' disqualification should be imposed on the termination of claimant's employment with appellant or his later employment with the California company. This question is not material here except to illustrate our viewpoint. We think that since, as indicated by the record, claimant took the latter employment as a permanent job and quit it voluntarily, the ten weeks' disqualification should be imposed on that incident. We therefore agree that claimant's employment in California could not be treated as a part "satisfaction" [under (g)] of a disqualification imposed on quitting [voluntarily] his job with appellant in early October.

Then, if we give meaning to subsection (g), we must determine what kind of employment claimant could engage in which would work a "satisfaction," in whole or in part, of his disqualification. It appears that the Act contemplates such work as would be of a temporary nature, or perhaps such work as the Commissioner might determine was not suitable to claimant's ability or fitness.

Again, we think there is little doubt about Phillips' job with the Compress being a temporary job. He said, himself, he knew it would be and later developments proved it to be so. We recognize that in such instances the Commissioner must first decide whether the employ-

ment is permanent or temporary, but his decision is always subject to review.

It is our conclusion that Phillips' work with the Compress was temporary and therefore cannot be considered his last employment in the sense that he became immediately eligible to draw benefits, but that said period of employment, in conformity with the regulations of the Commissioner, could only effect a satisfaction of the same period of his disqualification.

We think our conclusion is equitable and reasonable. If an employee quits a permanent job in order to take a better job which he thinks will be permanent, and then loses his second employment through no fault of his own, he should not be penalized. However, after quitting a permanent job, he should not be allowed to take a job which he knew would last only one or two days and thereby absolve himself from the imposed disqualification. After all, no money penalty is imposed by a disqualification, but only a postponement of the time when benefits may be received.

Reversed.

Justices McFadden and Millwee not participating.