329 S.E.2d 118

William BUTLER

v.

Phyllis J. RUTLEDGE, Clerk of the Circuit Court of Kanawha County; Board of Review of the West Virginia Department of Employment Security, J.F. McClanahan, as Chairman, C.C. Elmore, Jr. and Gregory E. Elliott, as Members; Nyle Hughes, as Commissioner; and Spencer Construction Company, Employer.

Rocky L. COLEBANK

v.

Phyllis J. COLE, Clerk of the Circuit Court of Kanawha County; Goodwin Lumber Company; the Board of Review of the West Virginia Department of Employment Security; J.F. McClanahan, as Chairman Thereof; C.C. Elmore, Jr., as a Member Thereof; Gregory Elliott, as a Member Thereof; and the Commissioner of the West Virginia Department of Employment Security.

Kermit E. ROWE

v.

Phyllis J. RUTLEDGE, Clerk of the Circuit Court of Kanawha County; Board of Review of the West Virginia Department of Employment Security, J.F. McClanahan, as Chairman, C.C. Elmore, Jr. and Gregory E. Elliott, as Members; Nyle Hughes, as Commissioner; and Heck's No. 18, Employer.

Lonzo WELLS

v.

Phyllis J. COLE, Clerk of the Circuit Court of Kanawha County; Board of Review of the West Virginia Department of Employment Security; Jewell F. McClanahan, as Chairman Thereof; C.C. Elmore, Jr., and Gregory E. Elliott, Members Thereof; Jack Canfield, as Commissioner, West Virginia Department of Employment Security; and Dakota Enterprises.

Nos. 16325, 16324, 16434 and 16117.

Supreme Court of Appeals of
West Virginia.

April 12, 1985.

Tom Rodd, North Cent. Legal Aid, Morgantown, for Colebank.

Robert S. Baker, Adler & Baker, Beckley, for Rowe.

Webster J. Arceneaux, III, Charleston, for Wells.

Garry G. Geffert, W.Va. Legal Services Plan, Martinsburg, for Butler.

Andrew N. Richardson, Dept. of Employment Sec., Charleston, for respondents.

McHUGH, Justice:

These actions are before this Court upon appeals from final orders of the Circuit Court of Kanawha County, West Virginia. The circuit court affirmed the determinations of the West Virginia Department of Employment Security that the petitioners voluntarily left their employment and were, therefore, disqualified under *W. Va. Code,* 21A–6–3(1) [1981], from receiving unemployment compensation benefits. The petitioners are William Butler, Rocky L. Colebank, Kermit L. Rowe and Lonzo Wells. The respondents include the Commissioner and various officials of the Department of Employment Security. We consolidated these actions for purposes of argument and submission. This Court has before it the petitions, all matters of record and the briefs and argument of counsel.

## I

In the *Butler* action, William Butler worked for Spencer Construction Company as a welder from November 3, 1981, until December 8, 1981. He left that employment to become a crane operator for Insta-Pipe, Inc. Butler worked for Insta-Pipe from December 9, 1981, until December 29, 1981. As the petition indicates, Butler was laid off by Insta-Pipe "because of weather conditions and a shut down of work by the company."

Butler filed a claim for unemployment compensation benefits. However, the West Virginia Department of Employment Security determined that he was disqualified (indefinitely from December 6, 1981) from receiving such benefits.[1]

In particular, the Board of Review of the Department of Employment Security, in affirming decisions upon Butler's claim by the deputy and administrative law judge, determined that, because Butler had worked for Insta-Pipe for less than "thirty working days," his lay off by Insta-Pipe could not be considered for purposes of unemployment compensation benefits. Rather, the Board of Review looked to Butler's employment with Spencer Construction Company and determined that, because

---

1. The West Virginia Department of Employment Security held that Butler was "eligible" to receive unemployment compensation benefits but "disqualified" from receiving such benefits. In *Kisamore v. Rutledge,* 166 W.Va. 675, 276 S.E.2d 821, 824 (1981), this Court recognized that "[w]hen an individual is held to be eligible to receive unemployment benefits, the next step is to consider possible disqualification for benefits."

Butler left that employment voluntarily, he was disqualified from receiving benefits.

The decision of the Board of Review, disqualifying Butler from receiving unemployment compensation benefits, was affirmed on February 29, 1984, by the Circuit Court of Kanawha County, West Virginia.

The actions involving Rocky L. Colebank, Kermit L. Rowe and Lonzo Wells are similar to *Butler*. In those actions, the petitioners left their original employment (in which they had worked for "thirty working days" or more) to take other jobs. The petitioners were laid off from those other jobs prior to working in such jobs for "thirty working days." The Department of Employment Security looked to the petitioners' original employment, determined that they left that employment voluntarily, and disqualified the petitioners indefinitely from receiving unemployment compensation benefits.[2] Those disqualifications were affirmed by the Circuit Court of Kanawha County.[3]

**2.** As in the *Butler* action, the Department of Employment Security determined that Colebank, Rowe and Wells were "eligible" to receive unemployment compensation benefits but "disqualified" from receiving such benefits. *See* n. 1, *supra.*

**3.** In the *Colebank* action, Rocky L. Colebank worked at the sawmill of Goodwin Lumber Company from July 9, 1981, until September 6, 1982. He left that employment (because of alleged shoulder and neck pain associated with heavy lifting at Goodwin Lumber) and began working as a tree trimmer for Asplundh Tree Experts. Colebank began working for Asplundh on or about September 7, 1982, and was laid off by Asplundh on October 1, 1982.

Colebank filed a claim for unemployment compensation benefits. However, the Department of Employment Security determined that he was disqualified (indefinitely from September 5, 1982) from receiving such benefits.

In particular, the Board of Review of the Department of Employment Security, in affirming decisions upon Colebank's claim by the deputy and administrative law judge, determined that, because Colebank had worked for Asplundh for less than "thirty working days," his lay off by Asplundh could not be considered for purposes of unemployment compensation benefits. Rather, the Board of Review looked to Colebank's employment with Goodwin Lumber Company and determined that he left that employment voluntarily. The Board, therefore, disqualified Colebank from receiving benefits.

The decision of the Board of Review, disqualifying Colebank from receiving unemployment compensation benefits, was affirmed on March 2, 1984, by the Circuit Court of Kanawha County, West Virginia.

The *Rowe* action involves a claimant for benefits, Kermit E. Rowe, who worked for Heck's No. 18 from October 3, 1980, until September 16, 1982. Rowe was an assistant manager at Heck's at the time he left that employment. He left Heck's and on September 20, 1982, began working for Spartan Sporting Goods Store. Rowe worked for Spartan for one week and was laid off. Rowe had been hired at Spartan by a person who, in fact, had no authority to hire him. The record indicates that Rowe was unable to return to Heck's because the position he left had been filled.

Rowe filed a claim for unemployment compensation benefits. However, the West Virginia Department of Employment Security determined that he was disqualified (indefinitely from September 12, 1982) from receiving such benefits.

The Board of Review of the Department of Employment Security, in affirming *decisions* upon Rowe's claim by the deputy and administrative law judge, determined that, because Rowe had worked for Spartan for less than "thirty working days," his lay off by Spartan could not be considered for purposes of unemployment compensation benefits. Rather, the Board of Review looked to Rowe's employment with Heck's and determined that, because Rowe left that employment voluntarily, he was disqualified from receiving benefits.

The decision of the Board of Review, disqualifying Rowe from receiving unemployment compensation benefits, was affirmed on May 24, 1984, by the Circuit Court of Kanawha County.

In the *Wells* action, Lonzo Wells worked for Dakota Enterprises as a "timberman" from February 19, 1982, until April 26, 1982. He left that employment (because of an alleged lack of full-time work) and, on April 26, 1982, began working for Runida Mining Co. Wells' employment with Runida continued until May 18, 1982, at which time he was laid off.

Wells filed a claim for unemployment compensation benefits. However, the West Virginia Department of Employment Security determined that he was disqualified (indefinitely from April 25, 1982) from receiving such benefits.

In particular, the Board of Review of the Department of Employment Security, in affirming decisions upon Wells' claim by the deputy and administrative law judge, determined that, because Wells had worked for Runida for less than "thirty working days," his lay off by Runida *could not* be considered for purposes of unemployment compensation benefits. Rather, the Board of Review looked to Wells' employment with Dakota and determined that he left that employment voluntarily. The Board, therefore, disqualified Wells from receiving benefits.

## II

Ruling that the petitioners left their "most recent work" voluntarily, the circuit court held that the petitioners were disqualified, under *W. Va. Code,* 21A–6–3(1) [1981], from receiving unemployment compensation benefits. The petitioners contend, however, that the circuit court committed error in concluding that the petitioners' "most recent work" was the employment in which they had worked for "thirty working days" or more. The petitioners ostensibly left that employment voluntarily. However, they were laid off from subsequent jobs. Although the petitioners worked for less than "thirty working days" in the subsequent jobs, the petitioners assert that those jobs constituted their "most recent work" within the meaning of the statute. Therefore, in view of the layoffs, the petitioners claim entitlement to unemployment compensation benefits.

*W. Va. Code,* 21A–6–3(1) [1981],[4] provides in relevant part:

> Upon the determination of the facts by the commissioner, an individual shall be disqualified for benefits:
>
> (1) For the week in which he left his most recent work voluntarily without good cause involving fault on the part of the employer and until the individual returns to covered employment and has been employed in covered employment at least thirty working days.

 In considering that statute, we reaffirm the principle that "[f]indings of fact by the Board of Review of the West Virginia Department of Employment Security, in an unemployment compensation case, should not be set aside unless such findings are plainly wrong; however, the plainly wrong doctrine does not apply to conclusions of law by the Board of Review." Syl. pt. 1, *Kisamore v. Rutledge,* 166 W.Va. 675, 276 S.E.2d 821 (1981). In

The decision of the Board of Review, disqualifying Wells from receiving unemployment compensation benefits, was affirmed on October 12, 1983, by the Circuit Court of Kanawha County.

**4.** *W.Va.Code,* 21A–6–3(1) [1981], was in effect during the period in question relating to these claims for unemployment compensation bene-

addition, we note that the West Virginia Unemployment Compensation Act is designed to compensate individuals who are *involuntarily* unemployed. *Lee-Norse Company v. Rutledge,* 170 W.Va. 162, 291 S.E.2d 477, 482 (1982). Furthermore, as this Court held in syllabus point 6 of *Davis v. Hix,* 140 W.Va. 398, 84 S.E.2d 404 (1954): "Unemployment Compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof." *See Lough v. Cole,* 172 W.Va. 730, n. 5, 310 S.E.2d 491, n. 5 (1983).

In disqualifying the petitioners from receiving benefits, the Department of Employment Security relied upon the language of *W. Va. Code,* 21A–6–3(1) [1981], that an individual shall be disqualified "until the individual returns to covered employment and has been employed in covered employment at least thirty working days." As indicated below, we disagree with the Department's determination of disqualification.

*W. Va. Code,* 21A–6–3(1) [1981], is the product of several years of statutory amendment.[5] We are particularly concerned with the 1981 amendment to the statute, in terms of the claims before this Court for unemployment compensation benefits. Immediately prior to the 1981 amendment, *W. Va. Code,* 21A–6–3(1), contained a definition of the word "work," i.e., "employment with the last employing unit with whom such individual was employed as much as thirty days, whether or not such days are consecutive." As the statute then provided in part:

> Upon the determination of the facts by the commissioner, an individual shall be disqualified for benefits:
>
> (1) For the week in which he left his most recent work voluntarily without good cause involving fault on the part of the employer and the six weeks immedi-

fits. That statute, however, has been amended twice since 1981. Those amendments are not dispositive of these actions.

**5.** The parties are to be complimented for their detailed analysis of the predecessors of *W.Va. Code,* 21A–6–3(1) [1981].

ately following such week. Such disqualification shall carry a reduction in the maximum benefit amount equal to six times the individual's weekly benefit rate. However, if the claimant returns to work in covered employment during his benefit year, the maximum benefit amount shall be increased by the amount of decrease imposed under the disqualification. *For the purpose of this subdivision, the term "work" means employment with the last employing unit with whom such individual was employed as much as thirty days, whether or not such days are consecutive.*

See ch. 106, Acts of the West Virginia Legislature, Regular Session, 1978.[6] (emphasis added—language subsequently deleted).

In 1981, *W.Va.Code*, 21A-6-3(1), was substantially amended. The definition of "work" was deleted.[7] Thus, under *W.Va. Code*, 21A-6-3(1) [1981], an individual is disqualified from receiving benefits for leaving his or her "most recent work voluntarily without good cause involving fault on the part of the employer and until the individual returns to covered employment and has been employed in covered employment at least thirty working days." Regarding the 1981 change, the petitioners assert: "By omitting the special definition of 'work' in the 1981 amendments, the legislature made clear its intent to consider only the last employer, not the last 30-day employer, when determining whether the voluntary quit disqualification applies." We agree.

▉ Syllabus point 2 of *Hall v. Baylous*, 109 W.Va. 1, 153 S.E. 293 (1930), states: "The Legislature must be presumed to know the language employed in former acts, and, if in a subsequent statute on the same subject it uses different language in the same connection, the court must presume that a change in the law was intended."

The petitioners left their original employment (in which they had worked for "thirty working days" or more) to take other jobs. They were laid off from the other jobs prior to working in such jobs for "thirty working days." This Court is of the opinion that in determining whether the petitioners fell under the "voluntary quit" disqualification from receiving unemployment compensation benefits, the Department of Employment Security and circuit court should have concluded that the other jobs constituted the petitioners' "most recent work" under *W.Va.Code*, 21A-6-3(1) as amended in 1981.

In *Great Lakes Steel Corporation v. Employment Security Commission*, 381 Mich. 249, 161 N.W.2d 14 (1968), a group of employees employed by Great Lakes Steel Corporation went on strike. The strike continued for several months. During the strike, the employees obtained "interim employment" from which they were laid off. The duration of the interim employment "varied from a few days to several weeks." 381 Mich. at 251, 161 N.W.2d at 15. The employees sought unemployment compensation benefits for the period of unemployment between the layoffs and the time they returned to work at Great Lakes Steel.

The Supreme Court of Michigan in *Great Lakes Steel Corporation* held that, because of the layoffs by their interim employers, the employees were entitled to unemployment compensation benefits. The court determined that the interim employers were the employees' last employers since they were the employers for whom the employees had last rendered services

---

6. *W.Va.Code*, 21A-6-3(1) [1981], can be traced to ch. 1, Acts of the West Virginia Legislature, Second Extraordinary Session, 1936. That Act included the following language:

Sec. 4. *Disqualification for Benefits.* Upon the determination of the facts by the director or his deputy, an individual shall be disqualified for benefits:

(1) For the week in which he left work voluntarily without good cause and for not

less than one nor more than five weeks which immediately follow.

7. Under *W.Va.Code*, 21A-1-3 [1981], the word "employment" is defined at length. That statutory definition, however, contains no provisions relevant to the disposition of the actions before this Court.

and from whom the employees had received remuneration.[8]

*See also Grier v. Unemployment Insurance Appeal Board*, 306 A.2d 22 (Del. 1973), employee who voluntarily left employment in order to work "indefinitely" as a bricklayer, but was dismissed from the bricklaying job after one day's work because of a discontinuation of the project, held not disqualified to receive unemployment compensation benefits; *Hope Brick Works v. Call*, 221 Ark. 928, 932, 256 S.W.2d 729, 731 (1953), [unemployment compensation case]: "If an employee quits a permanent job in order to take a better job which he thinks will be permanent, and then loses his second employment through no fault of his own, he should not be penalized."

■■■ Upon all of the above, we hold that in 1981, the West Virginia Legislature deleted from *W.Va.Code*, 21A–6–3(1), the provision that "work" means "employment with the last employing unit with whom such individual was employed as much as thirty days, whether or not such days are consecutive"; therefore, in determining whether an individual is disqualified under *W.Va.Code*, 21A–6–3(1) [1981], from receiving unemployment compensation benefits (for leaving his or her "most recent work voluntarily without good cause involving fault on the part of the employer"), "most recent work," in that context, need not be employment in which the individual worked for "thirty days" or "thirty working days"; however, once an individual is determined to be disqualified under *W.Va.Code*, 21A–6–3(1) [1981], from receiving benefits, the disqualification continues "until the individual returns to covered employment and has been employed in covered employment at

least thirty working days," as *W.Va.Code*, 21A–6–3(1) [1981], further provides. Furthermore, we hold that where individuals left their employment and took other jobs, and the individuals, prior to working at the other jobs for thirty working days, were laid off by their employers, the other jobs constituted the individuals' "most recent work" for purposes of determining whether they were disqualified under *W.Va. Code*, 21A–6–3(1) [1981], from receiving unemployment compensation benefits.

■■ As indicated above, we note that a disqualification under *W.Va.Code*, 21A–6–3(1) [1981], continues "until the individual returns to covered employment and has been employed in covered employment at least thirty working days." That language is concerned with the duration of a disqualification for benefits. That language should not be associated with determining "most recent work" under the statute, particularly in view of the 1981 amendment. Under *W.Va.Code*, 21A–6–3(1) [1981], "most recent work" is not equated with employment for "thirty working days."

■■ In these actions, William Butler's most recent work was with Insta-Pipe, Inc., and Rocky L. Colebank's most recent work was with Asplundh Tree Experts. Kermit E. Rowe's most recent work was with Spartan Sporting Goods Store, and Lonzo Wells' most recent work was with Runida Mining Co. The petitioners were laid off from that work, and, upon the record before us, it cannot be said that they were voluntarily unemployed. The petitioners are not disqualified under *W.Va. Code*, 21A–6–3(1) [1981], from receiving unemployment compensation benefits.[9] The

---

**8.** The Supreme Court of Michigan, in *Great Lakes Steel Corporation*, had before it a statute which provided, in part: "Subject to the other provisions of this section 'employment' means service, including service in interstate commerce, performed for remuneration or under any contract of hire, written or oral, express or implied."

**9.** The respondents have suggested that, unless "most recent work" is equated with work for "thirty working days," an individual could voluntarily leave employment and then arrange,

with a friend, for a one-day job and "layoff"—in order to receive unemployment compensation benefits. The West Virginia Unemployment Compensation Act, however, contains safeguards against such wrongful activity. Such an individual would not be involuntarily unemployed. *Lee-Norse Company v. Rutledge*, 170 W.Va. 162, 291 S.E.2d 477, 482 (1982), [the West Virginia Unemployment Compensation Act is designed to compensate individuals who are involuntarily unemployed]. Furthermore, as provided by *W.Va.Code*, 21A–10–7 [1981]: "A person who makes a false statement or representa-

petitioners were laid off after seeking gainful employment, and we perceive no legislative intent to penalize them under this State's Unemployment Compensation Act.

Therefore, the final orders of the Circuit Court of Kanawha County affirming the petitioners' disqualification from receiving unemployment compensation benefits are hereby reversed, and these actions are remanded to the Department of Employment Security for proceedings consistent with this opinion.

Reversed and remanded.

tion knowing it to be false or who knowingly fails to disclose a material fact in order to obtain or increase a benefit, either for himself or another ... shall be guilty of a misdemeanor...." *See also W.Va.Code*, 21A–10–10 [1949], which states: "A person who wilfully violates a provision of this chapter or rule or regulation thereunder for which a specific penalty has not been imposed shall be guilty of a misdemeanor...."