624 S.E.2d 783

NEWARK INSURANCE COMPANY, Plaintiff Below, Appellee,

v.

James P. BROWN, et al., Defendants Below, Appellants.

No. 32566.

Supreme Court of Appeals of West Virginia.

Submitted: Oct. 11, 2005.

Filed: Nov. 18, 2005.

**348**

Ralph C. Young, Hamilton, Burgess, Young & Pollard, PLLC, Fayetteville, for the Appellants.

Mary H. Sanders, Brian J. Headley, Huddleston Bolen LLP, Charleston, for the Appellee, Shelby Casualty Insurance Company.

Justice DAVIS delivered the Opinion of the Court.

DAVIS, Justice.

The appellants herein and defendants below, James P. Brown, D.D.S., and his wife, Lynn Brown [hereinafter collectively referred to as "Dr. Brown"], appeal from an order entered July 21, 2004, by the Circuit Court of Fayette County granting declaratory judgment to the appellee herein, Shelby Casualty Insurance Company [hereinafter referred to as "Shelby"].[1] By the terms of that order, the circuit court determined that, at the time Dr. Brown initially purchased and later renewed his policy of umbrella insurance with Shelby, W. Va.Code § 33–6–31(b) (1998) (Repl.Vol.2003) did not require Shelby to offer Dr. Brown uninsured or underinsured motor vehicle coverage in an amount up to the liability limits of such policy. On appeal to this Court, Dr. Brown contends that the circuit court erred because, he claims, the Legislature had imposed such a duty upon Shelby prior to its 2001 enactment of W. Va.Code § 33–6–31f(a) (2001) (Repl. Vol.2003), which specifically imposes such a duty upon umbrella insurance carriers. Upon a review of the parties' arguments, the record designated for appellate consideration, and the pertinent authorities, we find that the circuit court did not commit error in finding that Shelby did not have a duty, at the time of the events at issue herein, to offer Dr. Brown uninsured and underinsured motor vehicle coverage when he purchased

---

1. Although Newark Insurance Company is the named appellee in this appeal, the actual party appellee before the Court is Shelby Casualty Insurance Company. As a result of the underlying automobile accident, various parties have brought causes of action seeking to recover against numerous policies of insurance alleged to be applicable to said accident. *See* note 6, *infra.* At issue in the present appeal is Dr. Brown's litigation seeking recovery from his own insurance carrier, Shelby. *See* Section I, *infra.*

his policy of umbrella insurance. Accordingly, we affirm the circuit court's July 21, 2004, order.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The instant proceeding has its origins in a fatal car accident that occurred in Fayette County, West Virginia, on July 22, 2000. As a result of the accident, the minor driver and three minor passengers of the car that pulled into the path of the vehicle Dr. Brown was driving were killed,[2] and Dr. and Mrs. Brown sustained various injuries.[3] Following the accident, an interpleader suit was filed by the minor driver's insurance carrier, Newark Insurance Company, in the Circuit Court of Fayette County, against Dr. and Mrs. Brown and the estates of the minors involved in the accident.[4] Dr. Brown also filed a declaratory judgment action against his own insurer, Shelby Casualty Insurance Company, on October 24, 2001, to recover additional underinsured motorist benefits[5] for the injuries he and his wife sustained in the accident.[6]

At the time of the subject accident, Dr. Brown carried a motor vehicle liability insurance policy with Shelby that had limits of $100,000/$300,000, with identical amounts of uninsured and underinsured motor vehicle coverage.[7] In addition, Dr. Brown had a $1,000,000 personal liability umbrella insurance policy[8] also with Shelby that was in force and effect at the relevant time. Central to the issues Dr. Brown raised in his litigation against Shelby are the dates on which he purchased the aforementioned policy of umbrella insurance. He initially purchased said policy on April 15, 1994, and has subsequently renewed this policy on an annual basis. At the time relevant to the underlying automobile accident, Dr. Brown had renewed his umbrella insurance policy with Shelby on April 15, 2000, and the policy covered the period from April 15, 2000, to April 15, 2001.[9]

Before the circuit court, Dr. Brown asserted that he was entitled to recover underinsured motorist benefits from his policy of umbrella insurance because, he alleged, W. Va.Code § 33-6-31(b) (1998) (Repl.Vol. 2003)[10] specifically requires that an insurer who sells a policy providing motor vehicle insurance coverage is required to offer the insured the opportunity to purchase uninsured and underinsured motor vehicle coverage in an amount equal to the liability limits of said umbrella liability policy, in this case, $1,000,000. Because, Dr. Brown claimed, Shelby never offered him the opportunity to purchase such coverage,[11] it will be read into

---

2. According to the police investigation following the accident, it was determined that the minor driver had failed to yield the right of way and that Dr. Brown was not at fault for the accident.

3. For further details about the underlying automobile accident, see *Horace Mann Insurance Co. v. Adkins*, 215 W.Va. 297, 599 S.E.2d 720 (2004).

4. *See infra* note 7.

5. Shelby paid Dr. Brown the $100,000 limits of underinsured motor vehicle coverage available to him under his automobile insurance policy. Dr. Brown's third-party complaint seeks to recover additional amounts of underinsurance from his separate personal liability umbrella insurance policy. *See* note 8, *infra*, and accompanying text.

6. Other litigation has been filed by at least one minor passenger's estate against his own motor vehicle insurer, Horace Mann Insurance Company. *See* note 3, *supra*.

7. The Newark policy of insurance insuring the minor driver had total liability limits of $50,000/ $100,000, against which claims were made by

estates of the minors involved in the accident and Dr. and Mrs. Brown.

8. Umbrella insurance, also known as excess liability insurance, is defined as "[i]nsurance that is supplemental, providing coverage that exceeds the basic or usual limits of liability." Black's Law Dictionary 808 (7th ed.1999). *See also* Black's, at 811 (construing "umbrella policy" as "[a]n insurance policy covering losses that exceed the basic or usual limits of liability provided by other policies").

9. The coverage period for the renewal of Dr. Brown's motor vehicle insurance policy with Shelby was from July 13, 2000, to January 13, 2001.

10. For the relevant text of W. Va.Code § 33-6-31(b) (1998) (Repl.Vol.2003), see Section III, *infra*.

11. Shelby did, however, offer Dr. Brown the opportunity to purchase uninsured and underinsured motor vehicle coverage when he renewed his motor vehicle policy, which coverage he did purchase. *See supra* note 5.

his umbrella insurance policy as a matter of public policy and he is entitled to collect the additional underinsured motorist benefits that would have been provided thereby.

By contrast, Shelby contended that W. Va. Code § 33–6–31(b) did not require it to offer Dr. Brown an opportunity to purchase such uninsured and underinsured motor vehicle coverage when he purchased or renewed his umbrella insurance policy because this duty was not specifically imposed by the Legislature until it enacted W. Va.Code § 33–6–31f(a) (2001) (Repl.Vol.2003) [12] in 2001. Furthermore, Dr. Brown's policy of umbrella insurance expressly did "not provide Uninsured Motorists coverage, Underinsured Motorists coverage, or any similar coverage unless the policy is endorsed to provide such coverage." Insofar as the underinsured motorist benefits which Dr. Brown sought to recover from his umbrella insurance policy were specifically excluded thereby, Shelby asserted that he was not entitled to such a recovery.

Upon Dr. Brown's complaint requesting declaratory relief, the circuit court, by order entered July 21, 2004, found in favor of Shelby, concluding that, at the times relevant to this case, Shelby did not have a duty to offer Dr. Brown the option to purchase uninsured or underinsured motor vehicle coverage in an amount up to the liability limits of his umbrella insurance policy in conjunction with his purchase thereof. In so ruling, the circuit court explained that

> [I]t appears to the Court that the intention of the legislature during the period from April, 1994 through July, 2000, was to require the offer of uninsured and underinsured motor vehicle coverage only to automobile liability insurance policies or contracts. It appears to the Court that if the legislature had intended to include excess liability and umbrella type policies or any other general liability policies prior to July of 2001, as it did in 2001, it would have done so.

From this adverse ruling, Dr. Brown appeals to this Court.

12. See Section III, *infra*, for the pertinent language of W. Va.Code § 33–6–31f(a) (2001) (Repl.

## II.

### STANDARD OF REVIEW

■ The sole issue presented for our determination and decision by the instant appeal concerns the circuit court's interpretation and application of two statutory provisions: W. Va.Code § 33–6–31(b) and W. Va.Code § 33–6–31f(a). When we are called upon to review an order of a lower court rendering a declaratory judgment, we apply a plenary review to the circuit court's ruling. "A circuit court's entry of a declaratory judgment is reviewed *de novo.*" Syl. pt. 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995). *Accord* Syl. pt. 2, *Carvey v. West Virginia State Bd. of Educ.*, 206 W.Va. 720, 527 S.E.2d 831 (1999).

■ Likewise, with respect to the circuit court's rulings interpreting and applying the two statutory provisions at issue herein, we also apply a *de novo* standard of review. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). *See also* Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review.").

Having determined the standards of review applicable to the case *sub judice*, we will now consider the parties' arguments.

## III.

### DISCUSSION

In this appeal we are asked to determine whether W. Va.Code § 33–6–31(b) requires insurers to offer their insureds uninsured and underinsured motor vehicle coverage in conjunction with the insured's purchase of a policy of umbrella insurance or whether such a duty is imposed solely by W. Va.Code

Vol.2003).

§ 33–6–31f(a). During the proceedings underlying this appeal, the circuit court determined that the requirements of W. Va.Code § 33–6–31(b) do not apply to umbrella insurance policies. Dr. Brown contends that the circuit court erred and that W. Va.Code § 33–6–31(b) does extend the duty to offer such coverage to policies of umbrella insurance. Shelby, however, suggests that the circuit court correctly ruled and that no such duty existed until the Legislature enacted W. Va.Code § 33–6–31f(a) in 2001.

The statutes at issue in this proceeding are W. Va.Code § 33–6–31(b) and W. Va.Code § 33–6–31f(a). In relevant part, W. Va.Code § 33–6–31(b) (1998) (Repl.Vol.2003) directs

> [t]hat such policy or contract[13] shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy.

(Footnote added). Additionally, the pertinent language of W. Va.Code § 33–6–31f(a) (2001) (Repl.Vol.2003) provides that,

> [n]otwithstanding any other provisions of this article, insurers issuing or providing liability policies that are of an excess or umbrella type and which are written to cover automobile liability shall offer uninsured and underinsured motor vehicle coverage on such policies in an amount not less than the amount of liability insurance purchased by the named insured[.]

Before addressing the issue directly before the Court, however, it is helpful to review general principles of statutory construction.

Traditionally, when this Court is asked to resolve a question regarding a matter of statutory construction, we first consider the intent of the Legislature in enacting the subject provision. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."

Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975). Then, "[o]nce the legislative intent underlying a particular statute has been ascertained, we proceed to consider the precise language thereof." *State ex rel. McGraw v. Combs Servs.,* 206 W.Va. 512, 518, 526 S.E.2d 34, 40 (1999). When the language chosen by the Legislature is plain, we apply, rather than construe, such legislative language. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951). *Accord DeVane v. Kennedy,* 205 W.Va. 519, 529, 519 S.E.2d 622, 632 (1999) ("Where the language of a statutory provision is plain, its terms should be applied as written and not construed." (citations omitted)).

In the case *sub judice,* we are faced with two statutory provisions, both of which, by their express terms, impose upon insurers the duty to offer uninsured and underinsured motor vehicle coverage to an insured purchasing a policy of insurance in an amount not less than the liability limits of such policy. However, these statutes differ insofar as W. Va.Code § 33–6–31f(a) specifically states that it applies to policies of umbrella insurance coverage whereas W. Va.Code § 33–6–31(b) is silent as to whether it applies to umbrella policies. When faced with a choice between two statutes, one of which is couched in general terms and the other of which specifically speaks to the matter at hand, preference generally is accorded to the specific statute. "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syl. pt. 1, *UMWA by Trumka v. Kingdon,* 174 W.Va. 330, 325 S.E.2d 120 (1984). *Accord* Syl. pt. 6, *Carvey v. West Virginia State Bd. of Educ.,* 206 W.Va. 720, 527 S.E.2d 831 (1999). *See also Bowers v. Wurzburg,* 205 W.Va. 450, 462, 519 S.E.2d 148, 160 (1999)

---

**13.** "[S]uch policy or contract" refers to a "policy or contract of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle." W. Va.Code § 33–6–31(a) (1998) (Repl.Vol.2003).

("Typically, when two statutes govern a particular scenario, one being specific and one being general, the specific provision prevails." (citation omitted)); *Daily Gazette Co., Inc. v. Caryl,* 181 W.Va. 42, 45, 380 S.E.2d 209, 212 (1989) ("The rules of statutory construction require that a specific statute will control over a general statute[.]" (citations omitted)).

Applying this rule of statutory construction to the statutes at issue, it is apparent that W. Va.Code § 33–6–31f(a), as the statute specifically governing the obligations of insurers who issue policies of umbrella insurance, should prevail over the more general provisions of W. Va.Code § 33–6–31(b). That said, it is apparent that the Legislature imposed upon insurers a duty to offer uninsured and underinsured motor vehicle coverage to insureds in conjunction with their purchase of umbrella coverage when it enacted W. Va.Code § 33–6–31f(a) in 2001.

Moreover, the Legislature's act of promulgating W. Va.Code § 33–6–31f(a) strongly suggests that the requirements of W. Va.Code § 33–6–31(b) do not, and were not intended to, apply to umbrella policies. If W. Va.Code § 33–6–31(b) had been intended to apply to policies of umbrella insurance, the Legislature's subsequent enactment of W. Va.Code § 33–6–31f(a) would have been an unnecessary, redundant, and futile act, which we presume the Legislature would not have done. " 'It is always presumed that the legislature will not enact a meaningless or useless statute.' Syllabus Point 4, *State ex rel. Hardesty v. Aracoma–Chief Logan No. 4523, Veterans of Foreign Wars of the United States, Inc.,* 147 W.Va. 645, 129 S.E.2d 921 (1963)." Syl. pt. 1, *Richards v. Harman,* 217 W.Va. 206, 617 S.E.2d 556 (2005).

Additionally,

"[t]he Legislature must be presumed to know the language employed in former acts, and, if in a subsequent statute on the same subject it uses different language in the same connection, the court must presume that a change in the law was intended." Syl. pt. 2, *Hall v. Baylous,* 109 W.Va. 1, 153 S.E. 293 (1930).

Syl. pt. 2, *Butler v. Rutledge,* 174 W.Va. 752, 329 S.E.2d 118 (1985). *See also* Syl. pt. 11, *Rice v. Underwood,* 205 W.Va. 274, 517 S.E.2d 751 (1998) (" ' " ' 'A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; *it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter,* whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.' Syllabus Point 5, *State v. Snyder,* 64 W.Va. 659, 63 S.E. 385 (1908)." Syl. Pt. 1, *State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 305 S.E.2d 268 (1983), *superseded by statute on other grounds as stated in State ex rel. Hagg v. Spillers,* 181 W.Va. 387, 382 S.E.2d 581 (1989)[, *superseded by statute on other grounds as stated in State v. Yoak,* 202 W.Va. 331, 504 S.E.2d 158 (1998) ].' Syl. Pt. 2, *State ex rel. Hall v. Schlaegel,* 202 W.Va. 93, 502 S.E.2d 190 (1998)." (emphasis added)); *Banker v. Banker,* 196 W.Va. 535, 546–47, 474 S.E.2d 465, 476–77 (1996) ("It is not for [courts] arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, *we are obliged not to add to statutes something the Legislature purposefully omitted.*" (emphasis added) (citations omitted)).

It is apparent, then, that the Legislature's decision to promulgate W. Va.Code § 33–6–31f(a) signifies that it did not intend W. Va.Code § 33–6–31(b) to apply to policies of umbrella insurance and, thus, that W. Va. Code § 33–6–31(b) does not impose a duty upon insurers to offer insureds uninsured and underinsured motor vehicle coverage in connection with their purchase of umbrella coverage. Therefore, we hold that W. Va. Code § 33–6–31(b) (1998) (Repl.Vol.2003) does not require insurers to offer an insured uninsured and underinsured motor vehicle coverage in an amount not less than the policy's liability limits when an insured purchases a policy of umbrella insurance.

Finally, having ascertained that W. Va.Code § 33–6–31f(a) is dispositive of an insurer's obligation to offer uninsured and

underinsured motor vehicle coverage upon an insured's purchase of an umbrella policy, we must consider the language employed by the Legislature to determine the nature of such a duty. In pertinent part, W. Va.Code § 33–6–31f(a) directs that "insurers issuing or providing liability policies that are of an excess or umbrella type and which are written to cover automobile liability *shall* offer uninsured and underinsured motor vehicle coverage on such policies in an amount not less than the amount of liability insurance purchased by the named insured[.]" (Emphasis added). Prominent in this mandate to insurers is the Legislature's use of the word "shall". We repeatedly have held that "[i]t is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syl. pt. 1, *Nelson v. West Virginia Pub. Employees Ins. Bd.*, 171 W.Va. 445, 300 S.E.2d 86 (1982). *Accord* Syl. pt. 6, *State v. Myers*, 216 W.Va. 120, 602 S.E.2d 796 (2004), *cert. denied*, 543 U.S. 1075, 125 S.Ct. 925, 160 L.Ed.2d 813 (2005). *See also State ex rel. Brooks v. Zakaib*, 214 W.Va. 253, 264–65, 588 S.E.2d 418, 429–30 (2003) ("Ordinarily, the word 'shall' has a mandatory, directory connotation." (citations omitted)); *State v. Allen*, 208 W.Va. 144, 153, 539 S.E.2d 87, 96 (1999) ("Generally, 'shall' commands a mandatory connotation and denotes that the described behavior is directory, rather than discretionary." (citations omitted)).

We noted above that statutory language that is plain should be applied as written and not construed. *See, e.g.*, Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488. That said, we find the language of W. Va.Code § 33–6–31f(a) to be plain and to impose a mandatory duty upon insurers to offer their insureds uninsured and underinsured motor vehicle coverage when the insureds purchase policies of umbrella insurance that provide coverage for automobile liability. Accordingly, we hold that W. Va.Code § 33–6–31f(a)(2001) (Repl.Vol.2003) specifically requires that insurers "shall offer uninsured and underinsured motor vehicle coverage on … policies [that are of an excess or umbrella type and which are written to cover automobile liability] in an amount not less than the amount of liability insurance purchased by the named insured."

Despite this statutory duty imposed upon insurers vis-a-vis umbrella insurance policies, we nevertheless agree with the circuit court's decision finding that Shelby did not, under the facts of this case, have an obligation to offer Dr. Brown uninsured and underinsured motor vehicle coverage when he purchased or renewed his Shelby umbrella policy because the Legislature did not create this duty until 2001, nearly one year after the events giving rise to Dr. Brown's underinsurance claim. Insofar as there existed no statutory duty for insurers to make such an offer in connection with policies of umbrella insurance prior to this date, we affirm the circuit court's ruling awarding declaratory judgment to Shelby.

## IV.

## CONCLUSION

For the foregoing reasons, the July 21, 2004, order of the Circuit Court of Fayette County is hereby affirmed.

Affirmed.