639 S.E.2d 828

**James Robert EVANS, Jr., Petitioner Below, Appellant**

v.

**Sharon Rose EVANS, Respondent Below, Appellee.**

No. 33045.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 13, 2006.

Decided Nov. 14, 2006.

M. Timothy Koontz, Esq., Williamson, for Appellant.

Rose Esposito Rupe, Esq., Esposito & Esposito, Logan, for Appellee.

STARCHER, J.:

In this appeal from the Circuit Court of Logan County, we are asked to review a circuit court's decision that reversed on appeal an order by the Family Court of Logan County. The family court order terminated a "permanent" spousal support obligation imposed in a prior family court divorce order, because the recipient of the spousal support had remarried. The circuit court's decision re-imposed the spousal support obligation.

After careful review of the record and the arguments of the parties, we reverse the circuit court's decision.

## I.

### Facts & Background

Appellant James Robert Evans, Jr., and appellee Sharon Rose Evans separated after twenty-one years of marriage in October 2001, and the appellant filed for divorce. The parties—of whom, only the appellee was represented by counsel—entered into an oral separation agreement to resolve issues of spousal support and the distribution of the marital estate. As part of the agreement, the appellant agreed to pay the appellee $1,800.00 per month in spousal support until the death of either party.

No mention was apparently made in the parties' negotiations concerning the effect of the remarriage of the appellee upon the appellant's spousal support obligation. Furthermore, no mention was made of the potential effect of the appellee's remarriage at the final divorce hearing before the family court judge, or in the family court's final divorce order.

The final divorce hearing was held on November 21, 2002. The parties were questioned by the appellee's attorney about the terms of their oral agreement on the record. The questioning establishes the parties' understanding that the appellant's support obligation would terminate upon the death of either party. For instance, the following colloquy occurred between the appellee's attorney and the appellant:

Q. Is it also true that beginning with the month of January 1st of 2003 to let us get the paperwork done, beginning with January 1, 2003 you will pay her the sum of eighteen hundred dollars ($1800.00) alimony, permanent alimony to her. Is that correct?

A. Yes.

Q. And that eighteen hundred dollars ($1800.00) will be paid to her every month beginning with January of 2003 and continuing until her death or your death. Is that correct? In other words, if you should die you will be no longer obligated to pay it and if she would die of course she doesn't get it. Is that correct?

A. Yes.

However, again, there was no mention of the effect of the appellee's remarriage upon that obligation.

On January 7, 2003, the family court entered a final order granting the parties a divorce. The family court found the parties' agreement concerning spousal support to be fair, just and equitable, and ratified the agreement. The family court's order went on to state:

The [appellant], James Robert Evans, Jr., shall pay the sum of One Thousand Eight Hundred Dollars ($1,800.00) per month to the [appellee], Sharon Rose Evans, for her support and maintenance commencing January 1, 2003, and continuing each succeeding month thereafter until the death of either party.

The order is silent about the effect the appellee's remarriage might have upon the appellant's spousal support obligation.

Thereafter, on July 14, 2004, the appellant filed a petition for modification with the family court seeking to terminate his spousal support obligation. As the basis for the petition, the appellant stated that the appellee "has remarried and no longer needs the income."

In a brief order dated January 26, 2005, the family court granted the appellant's petition, and terminated the appellant's spousal support obligation effective January 1, 2005.

The appellee then appealed the case to the circuit court.

The circuit court, examining the statute pertaining to family court treatment of spousal support issues (a statute which we discuss in greater detail below), found that the family court had a statutory duty to assess the parties' oral agreement in January 2003 and definitively ascertain whether or not the appellant's spousal support obligation was to continue beyond the remarriage of the appellee, or to cease. *See W.Va.Code*, 48–6–203 [2001]. The circuit court concluded that the family court *had* properly assessed the parties' agreement in its January 2003 order, and concluded that the family court had found that the appellant's spousal support obligation terminated only upon one condition: the death of either party. The circuit court based its conclusion upon the silence of the family court: by making no mention of the effect of the appellee's remarriage, the circuit court found that the family court had essentially ordered that the appellant's spousal support obligation was to continue beyond the remarriage of the appellee.

In an order dated July 12, 2005, the circuit court reversed the family court's order, and reinstated the appellant's spousal support obligation. The appellant now appeals the circuit court's order.

## II.

### *Standard of Review*

■ Our standard of review was set forth in the Syllabus of *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004):

In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

*See also*, Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415

(1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

## III.

### *Discussion*

■ The parties' arguments revolve around different readings of the same statute pertaining to spousal support. The appellee's argument relies upon the first two sentences of the statute, while the appellant's argument relies solely upon the third sentence.

The statute, *W.Va.Code*, 48–6–203 [2001] states, in part:

When a separation agreement is the basis for an award of spousal support, the court, in approving the agreement, shall examine the agreement to ascertain whether it clearly provides for spousal support to continue beyond the remarriage of the payee or to cease in such event. When spousal support is to be paid pursuant to the terms of a separation agreement which does not state whether the payment of spousal support is to continue beyond the remarriage of the payee or is to cease, or when the parties have not entered into a separation agreement and spousal support is awarded, the court shall have the discretion to determine, as a part of its order, whether such payments of spousal support are to be continued beyond the remarriage of the payee. In the event neither an agreement nor an order makes provision for the remarriage of the payee, spousal support other than rehabilitative spousal support or spousal support in gross shall cease on the remarriage of the payee.[1]

The appellant argues that the family court correctly terminated the appellant's spousal support obligation upon the appellee's remarriage, and argues that the circuit court erred in finding that the parties had agreed otherwise. The appellant relies upon the third sentence of *W.Va.Code*, 48–6–203, which pro-

---

1. The remaining two sentences of *W.Va.Code*, 48–6–203 [2001], which are not pertinent to the instant case, state:

Rehabilitative spousal support does not cease upon the remarriage of the payee during the first four years of a rehabilitative period. In the event neither an agreement nor an order makes provision for the remarriage of the payee, spousal support in gross continues beyond the payee's remarriage.

vides if neither a separation agreement nor a family court divorce order makes any provision concerning the effect of one spouse's remarriage upon the other spouse's obligation to pay spousal support, then a court must terminate spousal support upon the spouse's remarriage. The appellant argues that because the parties' oral separation agreement and the family court's divorce order make no mention of the effect of the appellee's potential remarriage, then under *W.Va.Code*, 48–6–203, the agreement and order must be read to permit the appellant to seek to terminate his spousal support obligation upon the appellee's remarriage.

The appellee counters, however, by taking the position that the appellant's spousal support obligation was part of the parties' agreed equitable distribution of the marital estate, and that abolition of the appellant's support obligation will, in essence, result in an inequitable distribution of the estate. The appellee claims that the appellant had accumulated substantial assets and income prior to the parties' separation that he concealed from the appellee. Furthermore, the appellee claims that the appellant refused to comply with his discovery obligations and produce complete information regarding those assets and income sources. The appellee contends that the appellant, to avoid producing complete information about his financial status and to promptly resolve the divorce action, agreed that he would pay "permanent" spousal support to the appellee until either party died. In other words, the appellee argues that as part of the equitable distribution of the parties' marital estate, the appellant essentially agreed to pay spousal support until one of the parties died, without regard to any potential effect of the appellee's remarriage.

The appellee's argument then goes on to rely upon the first two sentences of *W.Va. Code*, 48–6–203, which impose upon a family court an obligation to examine any separation agreement pertaining to an award of spousal support and "ascertain whether it clearly provides for spousal support to continue beyond the remarriage of the payee or to cease in such event." *W.Va.Code*, 48–6–203 also gives family courts the "discretion to determine ... whether such payments of spousal support are to be continued beyond the re-

marriage of the payee." The appellee argues that the family court must be presumed to have followed these statutory mandates in its January 2003 order. By *explicitly* mandating that the appellant's spousal support obligation continued until the death of either party, the appellee contends that the family court must have also *implicitly* concluded that the support obligation continued beyond the remarriage of the appellee.

"Traditionally, when this Court is asked to resolve a question regarding a matter of statutory construction, we first consider the intent of the Legislature in enacting the subject provision." *Newark Ins. Co. v. Brown*, 218 W.Va. 346, 351, 624 S.E.2d 783, 788 (2005). "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus Point 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Then, "[o]nce the legislative intent underlying a particular statute has been ascertained, we proceed to consider the precise language thereof." *State ex rel. McGraw v. Combs Servs.*, 206 W.Va. 512, 518, 526 S.E.2d 34, 40 (1999). When the language chosen by the Legislature is plain, we apply, rather than construe, such legislative language. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syllabus Point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). *In accord, DeVane v. Kennedy*, 205 W.Va. 519, 529, 519 S.E.2d 622, 632 (1999) ("Where the language of a statutory provision is plain, its terms should be applied as written and not construed.").

"In the construction of a legislative enactment, the intention of the legislature is to be determined, not from any single part, provision, section, sentence, phrase or word, but rather from a general consideration of the act or statute in its entirety." Syllabus Point 1, *Parkins v. Londeree*, 146 W.Va. 1051, 124 S.E.2d 471 (1962). "It is a well known rule of statutory construction that the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning." *State ex rel.*

*Johnson v. Robinson,* 162 W.Va. 579, 582, 251 S.E.2d 505, 508 (1979). *See also,* Syllabus Point 9, *Vest v. Cobb,* 138 W.Va. 660, 76 S.E.2d 885 (1953) ("It is a cardinal rule of statutory construction that a statute should be construed as a whole, so as to give effect, if possible, to every word, phrase, paragraph and provision thereof, but such rule of construction should not be invoked so as to contravene the true legislative intention.").

▮ In general, where the parties to a divorce execute a separation agreement that is found by a court to be fair and reasonable, the court should conform its decision to the provisions of that agreement. *W.Va.Code,* 48–6–201 [2001] (If an agreement is fair and reasonable, "the court shall conform the relief which it is authorized to order . . . to the separation agreement of the parties."). *See also, Preece v. Preece,* 195 W.Va. 460, 463, 465 S.E.2d 917, 920 (1995) (same). This rule applies to both written and, as in the present case, oral separation agreements. Syllabus Points 1 and 2, *Gangopadhyay v. Gangopadhyay,* 184 W.Va. 695, 403 S.E.2d 712 (1991).

The appellee correctly argues that the first two sentences of *W.Va.Code,* 48–6–203 impose a duty upon a family court to assess a separation agreement's terms regarding the effect of marriage upon a spousal support obligation, and to clearly establish in a court order whether a spousal support obligation continues beyond the remarriage of the obligee. But only the appellant's arguments encompass the entirety of the statute's language and intent, which is that when both the parties and the family court fail to specify the effect of remarriage upon a spousal support obligation, then the default interpretation is that the remarriage of the obligee can be a basis for termination of the support obligation.[2]

▮ "It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syllabus Point 1, *Nelson v. West Virginia Public Employees Insurance Board,* 171 W.Va. 445, 300 S.E.2d 86 (1982). *W.Va.Code,* 48–6–203 states (with emphasis added) that "[i]n the event neither an agreement nor an order makes provision for the remarriage of the payee, spousal support . . . *shall* cease on the remarriage of the payee." We conclude that this statute is unambiguous and mandates—with the exception of cases involving an obligation for rehabilitative spousal support or spousal support in gross—that if neither a separation agreement nor a court order imposing a spousal support obligation upon a payor makes any provision regarding the effect of the remarriage of the payee upon the obligation, then a court, upon motion of a party, must terminate the obligation on the remarriage of the payee.

In the instant case, both the parties' separation agreement and the family court's January 2003 order are silent regarding the effect of the remarriage of the appellee upon the appellant's spousal support obligation. Accordingly, under *W.Va.Code,* 48–6–203, once the appellant moved to terminate his support obligation to the appellee following her remarriage, the family court was compelled to discontinue the support obligation. The family court's January 26, 2005 order terminating the appellant's support obligation was therefore correct, and the circuit court erred in holding otherwise.

We acknowledge the appellee's claim that this holding potentially results in an inequitable distribution of the parties' marital estate. However, the appellee was represented by counsel during the parties' settlement agreement negotiations, and if it is true, counsel could and should have made a record that the parties' agreement to "permanent" spousal

---

**2.** We recognize that the statute says that "spousal support . . . shall cease on the remarriage of the payee," but we also recognize that an individual obligated to pay spousal support cannot simply ignore a court order requiring the payment of that support. The proper procedure is for the individual to petition the family court for a modification of its prior support order, and for the family court to determine whether the proper basis exists for the termination of the support

obligation. *See* Syllabus Point 2, *Hayhurst v. Shepard,* 219 W.Va. 327, 633 S.E.2d 272 (2006) ("The authority of a family court to modify a spousal support or child support award is prospective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a family court is without authority to modify or cancel accrued alimony or child support installments.").

support meant that the obligation continued beyond the remarriage of the appellee. However, the record below is silent and neither supports nor contradicts the appellee's claim.[3]

Finally, *W.Va.Code*, 48–6–203 imposes a responsibility upon a family court to examine any agreement pertaining to spousal support and "ascertain whether it clearly provides for spousal support to continue beyond the remarriage of the payee or to cease in such event." In the instant case, the record reflects that the family court made no inquiries regarding the effect of the potential remarriage of the appellee.

*W.Va.Code*, 48–6–203 provides the family court with the authority to clarify separation agreements such as that reached by the parties. If the agreement makes no provision for the remarriage of the payee, "or when the parties have not entered into a separation agreement and spousal support is awarded," then under *W.Va.Code*, 48–6–203 the family court has "the discretion to determine, as part of its order," whether the spousal support obligation is to continue beyond the remarriage of the payee, or cease.

*W.Va.Code*, 48–6–202 [2001] imposes similar duties upon a family court, but rather than a party's marriage, this statute concerns the effect of a party's death upon a spousal support obligation.[4] Again, the statute re-quires a family court to carefully examine any spousal support agreement "to ascertain whether it clearly provides for spousal support to continue beyond the death of the payor or the payee or to cease in such event." If the agreement makes no provision for the death of either party, or when the parties have not entered into a separation agreement and spousal support is awarded, then under *W.Va.Code*, 48–6–202 the family court has "the discretion to determine, as part of its order," whether the spousal support obligation is to continue beyond the death of the payor or payee, or cease. And finally, like *W.Va.Code*, 48–6–203, *W.Va.Code*, 48–6–202 says that if the agreement or the court order are silent about the effect of a party's death upon the spousal support obligation, then the obligation "shall cease on the death of the payor or payee."

█ To give full meaning to *W.Va.Code*, 48–6–202 and –203, in the future, when a family court is asked to ratify a separation agreement that includes provisions pertaining to spousal support, or whenever spousal support is awarded in the absence of such an agreement, the family court is required to state whether the spousal support obligation continues or ceases upon the death of the payor or payee, and whether the spousal support obligation continues or ceases upon the remarriage of the payee.

**3.** Furthermore, the appellee's position wholly fails to take into consideration *W.Va.Code*, 48–5–706 [2001], which states that a "court may ... alter any prior order of the court with respect to the distribution of marital property, if ... [t]he alteration of the prior order as it relates to the distribution of marital property is necessary to avoid an inequitable or unjust result[.]"

**4.** *W.Va.Code*, 48–6–202 [2001] states:

When a separation agreement is the basis for an award of spousal support, the court, in approving the agreement, shall examine the agreement to ascertain whether it clearly provides for spousal support to continue beyond the death of the payor or the payee or to cease in such event. When spousal support is to be paid pursuant to the terms of a separation agreement which does not state whether the payment of spousal support is to continue beyond the death of the payor or payee or is to cease, or when the parties have not entered into a separation agreement and spousal sup-port is awarded, the court shall have the discretion to determine, as a part of its order, whether such payments of spousal support are to be continued beyond the death of the payor or payee or cease. In the event neither an agreement nor an order makes provision for the death of the payor or payee, spousal support other than rehabilitative spousal support or spousal support in gross shall cease on the death of the payor or payee. In the event neither an agreement nor an order makes provision for the death of the payor, rehabilitative spousal support continues beyond the payor's death, in the absence of evidence that the payor's estate is likely to be insufficient to meet other obligations or that other matters would make continuation after death inequitable. Rehabilitative spousal support ceases with the payee's death. In the event neither an agreement nor an order makes provision for the death of the payor or payee, spousal support in gross continues beyond the payor's or payee's death.

## IV.

### Conclusion

We reverse the circuit court's July 12, 2005 order, and remand the case for reinstatement of the family court's January 26, 2005 order.

Reversed and Remanded.